[Crim. No. 9124.   In Bank.   July 7, 1966.]

In re ROBERT A. KLOR on Habeas Corpus.

Edwin M. Rosendahl for Petitioner.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, William E. Doran and Michael T. Sauer, Deputy City Attorneys, for Respondent.

TOBRINER, J.—Petitioner Klor suffered conviction in the Municipal Court of the Los Angeles Judicial District of a violation of Penal Code section 311.2, which proscribes the distribution and exhibition of obscene matter. The Appellate Depart-

ment of the Superior Court of Los Angeles County, with one judge dissenting, affirmed the judgment, which has since become final. By his application for a writ of habeas corpus petitioner seeks relief from this adjudication.

We consider only the question whether the trial court committed error in instructing the jury that it could find petitioner guilty if it found either that he possessed the allegedly obscene material with an intent to distribute it *or* that he had prepared the material. We hold that the construction placed on the statute by the trial court does violence to the legislative intent and, moreover, would attribute to the statute a gratuitous unconstitutional reach.

On September 4, 1964, three ·police officers entered petitioner's home under the authority of an arrest warrant which charged him with an overdue parking ticket. After the officers had arrested petitioner on the parking charge, they advised him that they had received complaints that he produced lewd films and asked permission to see them. Petitioner replied that he did not make obscene motion pictures; he said that he would show the officers where he kept the films. Warning the officers that some of the reels might contain objectionable scenes he said: " '[T]hese are not ready for distribution through the mail. They need to be edited.' " At the request of the officers, petitioner screened a number of films which the officers found. Of these, the officers considered that two were obscene; one officer "requested . . . permission to take [the] films to the City Attorney's office so the City Attorney could view them, and form his opinion as to their obscenity." Petitioner consented to this procedure upon the condition that the city attorney be advised that the films were not intended for distribution in their present form.

Each of the involved motion pictures depicts a single nude female variously engaged in walking, exercising, and lying on a bed while making gestures characterized by the prosecution as "invitations to sexual activity." The films depict no intimacies between persons of the same or opposite sexes nor episodes of sexual activity either normal or perverted.

The statute under which petitioner stands convicted provides that "Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this State for sale or distribution, or in this State prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor."

(Pen. Code, § 311.2.) The trial court instructed the jury that it should convict petitioner if it found the materials "obscene" within the legal definition of that term[1] and found "*either* that he prepared this material, *or* . . . that he possessed it with the intention to distribute it." (Italics added.) In a number of different ways, the court communicated to the jury the idea that it need not find an "intention to distribute" if it concluded that defendant had prepared the materials.

■ We point out that the statute does not penalize mere preparation of obscene material; the statutory scheme clearly indicates that the dissemination or intended dissemination of obscene material constitutes the punishable evil. ■ The statutory words "prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession" must *all* be read in connection with the following words, "with intent to distribute or to exhibit or offer to distribute." The Legislature did not attach the language of such intent to each verb in the statutory series because to do so would have been to adopt an awkward construction. Indeed, to add such a requirement of intent in the case of the terms "exhibits," "distributes," and "offers to distribute" could create a redundancy. Hence the lack of explicit conjunction of the required intent with the word "prepares" resulted primarily from the linguistic style of the statute.

To read the words in piecemeal fashion is to fragmentize the legislative intent and assume legislative inconsistency. Indubitably the statute only condemns "*possession* with intent to distribute." If *possession* without intent to distribute does not violate the statute, the mere *preparation*, without such intent, cannot do so. The "possession" of *unfinished* matter, minus such intent, could hardly have been prohibited if possession of *finished* matter, minus the intent, were not. To adopt the trial court's construction of the statute would create a further disparity; the statute proscribes the importation into California of such obscene matter only as is intended for sale or distribution; the omission of such a qualification upon domestic production would mount a further legislative inconsistency in the prosecution's position.

---

[1]The definition of "obscene" is supplied by section 311, subdivision (a) which provides: " 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance."

Nor is the separation of the word "prepares" from the words of "intent to distribute" a sensible construction of the statute. Can we suppose that the Legislature meant to prohibit as criminal the anatomical study or drawing of an artist, still in an unfinished form, and intended for his inspection only, which a jury might at some later date deem to be obscene? We should not lightly accept so unnatural a construction of a statute for so dubious a purpose.

■ Finally, and most importantly, the trial court's construction of the legislation, at least as to the preparation of allegedly obscene matter without intent to disseminate it, would render the statute unconstitutional.

Without the requirement that the defendant be shown to have prepared the material with intent to distribute it in its obscene form, the statute would apply to matter produced solely for the personal enjoyment of the creator or as a means for the improvement of his artistic technique.[2] Such a statute would approach an interdiction of individual expression in violation of the First and Fourteenth Amendments. (See *Griswold* v. *Connecticut* (1965) 381 U.S. 479, 482 [85 S.Ct. 1678, 14 L.Ed.2d 510]; *American Communications Assn.* v. *Douds* (1950) 339 U.S. 382, 412 [70 S.Ct. 674, 94 L.Ed. 925].)[3] As Mr. Justice Brandeis observed, "The makers of our Constitu-

---

[2] As Mr. Justice Jackson observed, "We can have intellectual individualism and the rich cultural diversities that we owe to exceptional minds only at the price of occasional eccentricity and abnormal attitudes. *When they are so harmless to others or to the State as those we deal with here, the price is not too great.*" (*West Virginia State Board of Education* v. *Barnette* (1943) 319 U.S. 624, 641-642 [63 S.Ct. 1178, 87 L.Ed. 1628, 147 A.L.R. 674].) (Italics added.)

[3] The conviction which *Mapp* v. *Ohio* (1961) 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], reversed on other grounds involved Ohio Revised Code, section 2905.34, which provides in part: "No person shall knowingly . . . have in his possession . . . an obscene . . . book . . . picture, photograph, motion picture film. . . ." The dissenting opinion denominated the issue raised by the appeal as "whether § 2905.34 of the Ohio Revised Code making criminal the *mere* knowing possession or control of obscene material, and under which appellant has been convicted, is consistent with the rights of free thought and expression assured against state action by the Fourteenth Amendment." (*Mapp* v. *Ohio, supra,* 367 U.S. 643, 673 [dissenting opinion of Mr. Justice Harlan; fns. omitted].) Mr. Justice Stewart was "persuaded that the provision . . . is . . . not 'consistent with the rights of free thought and expression assured against state action by the Fourteenth Amendment.'" (*Id.* at p. 672 [Memorandum of Mr. Justice Stewart].)

The Ohio courts since *Mapp* have ruled that the statute does not penalize the mere possession of obscene material for private and personal gratification: the statute proscribes possession *only* with the purpose of circulating the material. (*State* v. *Wetzel* (1962) 173 Ohio St. 16 [179 N.E.2d 773]; *State* v. *Coleman* (Ohio Cty. Ct. 1963) 193 N.E.2d 198.)

tion undertook to secure conditions favorable to the pursuit of happiness. . . . They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations.'' (*Olmstead* v. *United States* (1928) 277 U.S. 438, 478 [48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376], Brandeis, J., dissenting.)

Moreover, as Chief Justice Warren points out in a concurring opinion in *Roth* v. *United States* (1957) 354 U.S. 476, 495 [77 S.Ct. 1304, 1 L.Ed.2d 1498], the central issue in a criminal obscenity trial pivots on the potentially punishable conduct of the defendant rather than upon the allegedly obscene nature of the material. (See *Ginzburg* v. *United States* (1966) 383 U.S. 463 [86 S.Ct. 942, 16 L.Ed.2d 31].) No constitutionally punishable conduct appears in the case of an individual who prepares material for his own use or for such personal satisfaction as its creation affords him.

Nor does such conduct occur if the creator intends to purge the material of any objectionable element before distributing or exhibiting it. To hold otherwise would pose grave technical difficulties for the unconventional artist and would, because of the risk of criminal sanctions, tend to suppress experimental and tentative productions that might become, in finished form, constitutionally protected communication. ''. . . [T]he Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line.'' (*Bantam Books, Inc.* v. *Sullivan* (1963) 372 U.S. 58, 66 [83 S.Ct. 631, 9 L.Ed.2d 584].)

A fundamental canon of statutory interpretation requires that a statute be construed to avoid unconstitutionality if it can reasonably be so interpreted. (*Lynch* v. *Overholser* (1962) 369 U.S. 705, 710-711 [82 S.Ct. 1063, 8 L.Ed.2d 211]; *Geiger* v. *Board of Supervisors* (1957) 48 Cal.2d 832, 839 [313 P.2d 545].)[4] As we have explained, section 311.2 of the Penal Code may reasonably be interpreted to penalize the producer of obscene matter only if he completes it and intends to distribute or exhibit it in such completed form.

Finally, we must determine whether petitioner, who

[4]We said in *Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 923 [31 Cal. Rptr. 800, 383 P.2d 152], ''Courts must therefore move here with utmost caution; they tread in a field where a lack of restraint can only invite defeat and only impair man's most precious potentiality: his capacity for self-expression.''

now attacks his conviction collaterally, may urge the unconstitutionality of the charge to the jury. We have held that a petitioner who collaterally attacks a conviction based upon a statute containing both valid and invalid portions bears the "burden of proving that he was not tried and convicted for violating the valid part of the statute." (*In re Bell* (1942) 19 Cal.2d 488, 504 [122 P.2d 22].)

The trial court instructed the jury that it could convict if it found *either* that petitioner prepared obscene films *or* that he possessed such films with an intent to distribute them. We have determined that the first portion of this charge, making possible conviction upon a showing that petitioner merely prepared the films, is constitutionally objectionable. Review of the record reveals that the evidence tending to establish petitioner's preparation of the films was essentially uncontradicted as was that tending to establish that petitioner intended to edit the films before distribution.[5] So strong was the evidence tending to establish petitioner's guilt under the erroneous portion of the charge and so weak the evidence which would ground a conviction under the valid portion that we determine that petitioner can discharge his "burden of proving that he was not . . . convicted for violating the valid part. . . ."

In summary, we do not believe that the Legislature intended to inhibit the mere preparation of allegedly obscene material not intended for distribution. We cannot believe that the Legislature meant to freeze the creative process and cast the maker's unfinished product into forbidden form during its genesis. Thus to stifle individual expression would be to shackle creativity itself.

The writ is granted, and petitioner is discharged from the

---

[5]Petitioner made no attempt to deny the testimony of the models, Candy Bunch and Lori Lorianne, that he made the films.

On the other hand, the prosecution introduced no evidence which would have tended to prove that petitioner intended to distribute the films without further editing. On the contrary, the police officers testified that petitioner had been extremely cooperative with their requests to view his films and had consented to the removal of the two which the officers finally selected only after petitioner advised them that these two films had not yet been edited. Moreover, despite the claim of the officers that they had received complaints that petitioner distributed obscene films and that petitioner had allegedly once boasted that his business had a "potential" of $50,000 a year, the police were apparently unable to produce a single obscene picture distributed by petitioner. The mere fact that petitioner may have been in the business of making and distributing "girlie" movies does not tend to negate the evidence that petitioner intended to edit the present films unless the court should make the unwarranted assumption that the present films after editing could not be marketed.

custody imposed by the Municipal Court of the Los Angeles Judicial District pursuant to the judgment of November 18, 1964.

Traynor, C. J., Peters, J., Peek, J., and Mosk, J., concurred.

BURKE, J.—I dissent. Petitioner attacks collaterally a final judgment convicting him of violating the obscenity statute, but has failed to meet his burden of establishing that he was *not* convicted of possession of obscene matter with intent to distribute it.

Petitioner was convicted under an instruction to the jury that it should convict if it found that he had *either prepared* obscene material, *or possessed* it *with* the *intent to distribute* it. Nothing in the majority opinion appears to question the correctness or constitutional validity of the possession with intent to distribute portion of the instruction. However, the trial court's construction of the statute as reflected in the alternate ground of preparation without intent to distribute is held to be erroneous and, so the majority opinion states, "would render the statute unconstitutional."

It cannot be determined whether petitioner was convicted of preparation alone, or of possession with intent to distribute, or was found guilty on both grounds. If this case were before us on appeal or other direct attack, such ambiguity might well warrant or require reversal of the judgment. Such was the holding of the United States Supreme Court in *Robinson* v. *California* (1962) 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed.2d 758], *a direct attack on appeal* from a conviction under two alternate jury instructions, one of which was held constitutionally permissible and the other to be invalid as a violation of the Eighth and the Fourteenth Amendments. (See also *In re Bell* (1942) 19 Cal.2d 488, 500 [122 P.2d 22].)

This matter is here on habeas corpus, however. As emphasized and explained in detail in *In re Bell*, a habeas corpus proceeding "is in the nature of a collateral attack, and a judgment that is collaterally attacked carries with it a presumption of regularity," citing *Johnson* v. *Zerbst* (1938) 304 U.S. 458, 468 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357]. (P. 500 of 19 Cal.2d.) In *Bell* petitioners had been found "guilty as charged" under a complaint charging violation of any one "and/or" any other provisions of an ordinance, only one provision of which (prohibiting picketing by acts of violence) was

held by this court to be valid. In rejecting their efforts to secure release on habeas corpus, the opinion declares (p. 501) that in such a proceeding the presumption of regularity is not conclusive, ''but places upon petitioners the burden of proving that their convictions were based not upon the constitutional but upon the unconstitutional provisions of the ordinance. [Citation.] Unless they can sustain this burden they must be considered as having been convicted of violating the valid provision relating to acts of violence, and the judgment must be upheld. . . . [P. 504.] If . . . it cannot be determined from the charge and conviction whether or not petitioner was tried and convicted for violating the valid part, the court must examine the evidence, not to test whether it is sufficient to support a verdict, but to determine whether petitioner was tried and convicted for violating the invalid part alone, in which case the conviction must fall, or whether he was tried and convicted for violating the valid part as well, in which case the conviction must stand. The petitioner has the *burden of proving* that he was *not* tried and *convicted for violating* the *valid part* of the statute.

''Petitioners in the present case have failed to sustain the *burden of proving that they were not tried and convicted for acts of violence* since the transcripts of testimony at their trials reveal evidence of such acts. . . . [P. 505.] Because petitioners have failed to sustain the *burden of proving that they were not convicted of the one valid provision* of the ordinance prohibiting acts of violence, the writ heretofore issued is discharged and the petitioners are remanded. . . .'' (Italics added.)

The rules so enunciated and applied in *Bell* were recently reaffirmed and given like application by this court in *In re Carlson* (1966) *ante,* p. 70 [48 Cal.Rptr. 875, 410 P.2d 319]. Carlson had been convicted of violation of section 11721 of the Health and Safety Code, a statute which some years later (in *Robinson* v. *California, supra* (1962) 370 U.S. 660) was held valid in prohibiting the use of narcotics but unconstitutional insofar as it purported to constitute the status of narcotics addiction a crime. Carlson thereupon sought release on habeas corpus, but as noted in the opinion (*ante,* at p. 73) failed to produce a record showing whether he had been charged with use and addiction, or solely addiction. Citing and relying upon *Bell,* we denied relief. In so doing, the opinion notes (*ante,* at p. 73) that the writ should not issue if petitioner's ''conviction had, as a sufficient ground, something

other than the illicit portion of the statute. [Citing *Bell.*]
. . . [*Ante,* at p. 75.] The presumption of regularity which at-
tached to a judgment collaterally attacked [citations, includ-
ing *Bell*] places upon a petitioner the *burden of proving that
his conviction* was *based not upon the constitutional* but upon
the unconstitutional provisions of the statute under which he
was convicted. [Citing *Bell.*] In attempting to sustain this
burden he is not confined to the evidence presented at trial but
may have resort to 'any necessary additional evidence bearing
on the infringement' of his rights. [Citing *Bell.*] Petitioner
has failed to present evidence sufficient to sustain this burden,
and his petition must therefore be denied.'' (Italics added.)

Thus both *Carlson* and *Bell* emphasize and follow the rule
that the petitioner's burden is sustained only by affirmatively
proving that he was *not* convicted of the *valid* portion of the
statute or instruction.

In the present case, as in *Carlson* and *Bell*, petitioner has
failed to sustain the burden of proving that he was not con-
victed under the valid portion of the jury instruction, i.e., of
possession of obscene material with intent to distribute it,
since the transcript of testimony at his trial reveals evidence
which would support a conviction under that portion. It was
shown that petitioner was a $50,000 a year commercial pro-
ducer of films and pictures, and was in the mail order business
of selling films of nude women. The charges involved here
came to the attention of the police upon the complaint of one
of the models photographed by petitioner in the films upon
which his conviction was based. She testified that during the
filming in his apartment it appeared to her, as an experienced
model, that he was photographing her private parts; that the
pictures of her were being taken in a manner substantially
beyond customary limits of candor; that when she objected
petitioner asserted that the special lens he was using would
exclude that portion of her anatomy from the pictures; that
she did not believe him and upon completion of the filming
stated she would not sign a release of the film for use until she
had been given an opportunity to examine the pictures; he
assured her that she would be given that opportunity, but
repeated demands were to no avail; in a conversation with the
model involved in the second film the latter indicated to the
witness that she too had received the same assurances by peti-
tioner during the filming of her body and that she suspected
that he had not told her the truth concerning the camera he
was using. As a result, the two models went to the police. The

826

trial court and jury witnessed both films, which clearly demonstrated that petitioner had lied to his models and that he did in fact photograph their private parts. The above related evidence considered in the light of petitioner's profession would plainly support a conclusion by the jury that he produced and possessed these films with intention to distribute and exhibit them. It follows that petitioner has failed to discharge his burden on this collateral attack on the judgment of conviction, and that the writ of habeas corpus which he seeks should be denied.

McComb, J., concurred.