No. 91, Misc. BUDD v. CALIFORNIA. Sup. Ct. Cal. Certiorari denied. *George F. Duke, Marshall W. Krause* and *James B. Schnake* for petitioner. *Thomas C. Lynch,* Attorney General of California, *Albert W. Harris, Jr.,* Assistant Attorney General, and *William D. Stein,* Deputy Attorney General, for respondent. Briefs of *amici curiae,* in support of the petition, were filed for the Public Defender of Sacramento County, and by *Eugene I. Lambert* for the Washington, D. C., Area Council on Alcoholism et al.

MR. JUSTICE FORTAS, dissenting from the denial of certiorari.

This case presents the important question whether punishment may constitutionally be inflicted, pursuant to § 647 (f) of the California Penal Code, upon a person suffering from the disease of alcoholism—as distinguished from drunkenness or periodic, voluntary overindulgence in intoxicants. The California statute provides, in part, that any person "found in any public place under the influence of intoxicating liquor . . . in such a condition that he is unable to exercise care for his own safety or the safety of others" is guilty of a misdemeanor. Petitioner

challenges the statute on the ground, among others, that its application to him, allegedly an alcoholic, constitutes "cruel and unusual punishment" in contravention of the Eighth Amendment of the Federal Constitution.

I believe that we should grant the writ. The trial court made no finding as to whether petitioner suffered from alcoholism, presumably because of its legal conclusion that alcoholism affords no defense to the statutory charge. The trial record squarely presents the issue whether alcoholism is, as a matter of law, a defense to the charge. There is abundant evidence in this record to impel a finding that petitioner is an alcoholic, that he suffers from an illness which results in inability to control either his drinking or certain aspects of behavior after he has been drinking. And the constitutional questions sought to be raised here were presented to each of the state courts through which this case has passed.[1]

It is time for this Court to decide whether persons suffering from the illness of alcoholism and exhibiting

---

[1] Petitioner is seeking review of the denial by the California Supreme Court of a writ of habeas corpus. Respondent challenges our jurisdiction on the ground that petitioner failed to seek review here of the summary affirmance by the Appellate Department of the California Superior Court, or of that court's refusal to certify the case to the District Court of Appeal. Although determination of the jurisdictional issue can be postponed until the case is heard on the merits, no reason appears why we cannot properly review the denial of habeas corpus. It appears that the California Supreme Court, in which petitioner sought a writ of habeas corpus in lieu of proceeding here by way of certiorari, had jurisdiction over the questions raised. *In re Klor,* 64 Cal. 2d 816, 415 P. 2d 791 (1966); *In re Zerbe,* 60 Cal. 2d 666, 388 P. 2d 182 (1964); see *In re Jackson,* 61 Cal. 2d 500, 393 P. 2d 420 (1964). Accordingly, we have jurisdiction to entertain this as a timely petition for review of the final decision of the highest court of the State.

its symptoms or effects may be punished criminally therefor. The Court has already held that a State may not punish for narcotics addiction, that to do so would violate the constitutional prohibition of cruel and unusual punishment. *Robinson* v. *California*, 370 U. S. 660 (1962). MR. JUSTICE STEWART's opinion for the Court in *Robinson* makes it clear that a State may not constitutionally inflict punishment for an illness, whether the illness be narcotics addiction or the "common cold." *Id.*, at 667.[2] We should hear argument in the present case to consider whether it presents a situation which commands similar constitutional proscription.

The question has great practical and social significance. We are told that some 6,000,000 Americans are afflicted with alcoholism and that each year more than 1,500,000 arrests—three of every eight—are for drunkenness. Although we do not know how many of those arrested for drunkenness are properly classifiable as alcoholics—that is, whose conduct may be traced to illness rather than

---

[2] This principle, that the sick should be treated in hospitals rather than in prisons, is beginning to affect our society's view as to the disposition even of those who are "ill" but, unlike *Robinson,* are convicted for crimes other than the illness itself. See S. 2191 and H. R. 9167, bills pending in the Eighty-ninth Congress to provide civil commitment rather than imprisonment for certain narcotics addicts convicted of federal criminal offenses. See 112 Cong. Rec. 24401–24421 (Oct. 6, 1966), and especially, the statement of Senator McClellan whose committee reported the Senate bill out. According to Senator Ervin, who joined in urging passage, the rationale for the proposed legislation is the "proposition . . . that drug addiction is primarily a medical problem, not a criminal problem. . . . We must heed the advice our medical authorities have offered for many years and establish procedures for the medical treatment of individual addicts designed to cure and rehabilitate them so that they can be returned to society as useful, productive citizens." *Id.*, at 24419.

to choice—there is ample evidence that the number is very large.[3]

Petitioner's case presents the familiar and dismal round of repeated sojourns in the "drunk-tank"; the spectacle of repeated cycles of arrests for "drunkenness," incarceration, release, and arrest for "drunkenness" all over again. At age 56, petitioner has a record of more than 40 arrests for drunkenness or conduct while drunk. There was testimony that petitioner has been an alcoholic for over 30 years, that his act of buying liquor, as well as drinking to intoxication, is involuntary. In the past 10 years, he has been through the arrest-release cycle more than 20 times.

This record and the medical literature admonish us that punishment of alcoholics does society no good. It can be applauded only by the uninformed or the sadistic. It is neither a deterrent nor a cure for those afflicted. On the contrary, as testified here, it is not only ineffective, but "particularly antitherapeutic because it increases the feelings of worthlessness that all alcoholics have . . . ." This does not, of course, mean that alcoholics need be, or should be, permitted to endanger themselves and others, or to be public nuisances. Each of the 50 States has some sort of noncriminal procedure for dealing with alcoholics, and in each State some procedure exists or can be provided for intelligent, purposeful handling of the various aspects of the problem.

Our morality does not permit us to punish for illness. We do not impose punishment for involuntary conduct, whether the lack of volition results from "insanity," ad-

---

[3] See 162 Journal of the American Medical Assn. 750 (October 1956); "Alcoholism," Public Health Serv. Pub. No. 730 (1960); Message of the President to Congress, March 1, 1966, proposing a program to attack the disease of alcoholism, 112 Cong. Rec. 4145, 4147.

diction to narcotics, or from other illnesses. The use of the crude and formidable weapon of criminal punishment of the alcoholic is neither seemly nor sensible, neither purposeful nor civilized. This Court should determine whether it is constitutionally permissible, or whether, as the Court of Appeals for the Fourth Circuit [4] and four of the eight judges of the Court of Appeals for the District of Columbia Circuit [5] have held, it is cruel and unusual punishment—punishment in the absence of volitional fault, punishment which our Constitution forbids.

MR. JUSTICE DOUGLAS joins this opinion, believing that being an alcohol addict, like being a drug addict, is beyond the reach of the criminal law for the reasons stated in his concurring opinion in *Robinson* v. *California,* 370 U. S. 660, 668.

---

[4] *Driver* v. *Hinnant,* 356 F. 2d 761 (C. A. 4th Cir. 1966).

[5] *Easter* v. *District of Columbia,* 124 U. S. App. D. C. 33, 361 F. 2d 50 (1966), in which the entire court agreed that Congress intended that District alcoholics not be punished for the offense of public drunkenness, four of the judges preferring to rest their decision on constitutional grounds.