**Robert A. KLOR, Plaintiff,**

v.

**Terrance W. HANNON, Terry D. Pierce & Ronald Keller, Defendants.**

No. 65–1302.

United States District Court
C. D. California.

Dec. 19, 1967.

**362**

---

Edwin M. Rosendahl, Beverly Hills, Cal., for plaintiff Klor.

Roger Arnebergh, City Atty. of Los Angeles, John A. Daly, Asst. City Atty., and Nowland C. Hong, Deputy City Atty., Los Angeles, Cal., for defendants Hannon, Pierce and Keller.

## DECISION
## FINDINGS OF FACT
## and
## CONCLUSIONS OF LAW

HAUK, District Judge.

■ The complaint herein adequately states a claim under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983,[1] because it alleges facts which show that the defendants: (1) while acting under color of state statute, ordinance, regulation, custom or usage, (2) subjected, or caused to be subjected, a person within the jurisdiction of the United States to the deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States. Cohen v. Norris, 300 F. 2d 24, 30 (9th Cir. 1962); Marshall v. Sawyer, 301 F.2d 639, 643 (9th Cir. 1962); Lucero v. Donovan, 354 F.2d 16, 19–20 (9th Cir. 1965); Lucero v. Donovan, 258 F.Supp. 979, 980 (C.D.Cal. 1966).

■■ Moreover, the complaint sufficiently sets forth a claim under Section 2 of the Civil Rights Act of 1871, 42 U. S. C. § 1985(3)[2] because it alleges the necessary two additional elements: (1) that the defendants conspired or acted jointly or in concert; and (2) that overt acts were done pursuant to the conspiracy which damaged plaintiff. Hoffman v. Halden, 268 F.2d 280, 294 (9th Cir. 1959); Cohen v. Norris, 300 F.2d 24, 27–28 (9th Cir. 1962). It follows that this Court has jurisdiction by virtue of 28 U.S.C. § 1331(a), the Federal question jurisdiction;[3] and under 1343

---

1. "§ 1983. *Civil Action for deprivation of rights*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. "1985. *Conspiracy to interfere with civil rights—Preventing officer from performing duties—Depriving persons of rights or privileges*

(3) If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted au-

thorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

3. "§ 1331. *Federal question; amount in controversy; costs*

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000.00, exclusive of interests and costs, and arises under the Constitution, laws, or treaties of the United States."

(1),[4] 1343(3),[5] 1343(4),[6] which give District Courts original jurisdiction of civil actions to recover damages and secure redress by way of equitable and other relief for deprivation of Constitutional and civil rights, whether resulting from conspiracy or direct acts. Cohen v. Norris, 300 F.2d 24, 26 (9th Cir. 1962); Monroe v. Pape, 365 U.S. 167, 169, 81 S.Ct. 473, 474, 5 L.Ed.2d 492, 495 (1961); Lucero v. Donovan, 258 F.Supp. 979, 980 (C.D. Cal.1966).

Plaintiff alleges that the defendant police officers, under color of State law, conspired to interfere and deprive Plaintiff of his civil rights and in furtherance of the conspiracy while possessed with a warrant for his arrest unlawfully searched for and seized personal property of the Plaintiff, assaulted his person and thereafter intentionally and maliciously damaged and mutilated said personal property, all of which acts were in violation of the United States Constitution and particularly the First and Fourth Amendments.

The trial concluding on September 22nd, 1967 the Court now makes its Decision, Findings of Fact and Conclusions of Law in favor of the police officer Defendants Hannon, Pierce and Keller.

On September 1st, 1964, two women went to the Hollywood Police Station to complain that while employed to pose for nude potographs for the Plaintiff herein, they believed contrary to the terms of their employment with him that he had taken photographs of their private parts and that such photographs might be considered lewd and obscene. A report of these complaints was made by Defendant

Hannon, a sergeant of police assigned to the vice detail, and he assigned Defendants Pierce, Keller and Officer Wade, not a defendant in this action, to investigate the complaints.

In order to locate and discover the whereabouts and other information on the Plaintiff, the records of the Police Department were consulted. An address was found along with an outstanding traffic warrant and with this information an attempt was made to contact the Plaintiff. On the afternoon of September 4th, 1964, Plaintiff was found at his apartment where Defendants Pierce, Keller and Officer Wade identified themselves and were asked into the premises by the Plaintiff. He was informed of the warrant and it was explained to him. Thereafter, Plaintiff was told that a complaint was made regarding his making lewd or obscene motion pictures.

Plaintiff denied the accusations of the complaint by the women and voluntarily escorted the three policemen about his entire apartment, opening cupboards and drawers containing a large volume of slides of naked women and motion pictures he produced and sold in his business. Following this, Defendant Hannon was called to the premises to view several slides which Defendant Keller felt may have been obscene.

Defendant Hannon was also voluntarily given a tour by Plaintiff of his premises and observed two boxes bearing the first names, "Candy" and "Lorrie", of the two complaining women and at the conclusion of the inspection led by Plaintiff, Defendant Hannon asked if he could see some films and obtained four boxes of films,

---

**4.** "§ 1343. *Civil rights and elective franchise*

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;"

**5.** "(3) To redress the deprivation, under color of any State law, statute, ordinance,

regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

**6.** "(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

which included those bearing the names of the two women, from a cupboard in the kitchen above the range without any protest or objection by Plaintiff.

The Plaintiff agreed to show the films and proceeded to run them on a projector he had in the apartment. After viewing the films "Candy" and "Lorrie" Defendant Hannon asked if he could take the two films and have the City Attorney of Los Angeles view them. Plaintiff agreed and told the Defendant Hannon that he should inform the City Attorney that these films as yet were unedited. The films were viewed by the City Attorney's Office which was informed of the Plaintiff's claim that the films were unedited. That Office being of the opinion that the motion pictures were obscene, a warrant for Plaintiff's arrest was obtained from the Municipal Court for violation of Penal Code Section 311.2.

Possessed with a copy of the warrant on September 10th, 1964, Defendant Pierce and Officer Wade, without Defendant Keller, sought to serve the warrant on Plaintiff. They waited at his post office box for a time and went to his apartment several times. Finally, after knocking on the Plaintiff's door he was observed coming from a nearby elevator.

Plaintiff approached the two policemen who were in plain clothes and greeted them. Defendant Pierce informed Plaintiff they wished to speak to him and Plaintiff stated they could not go into his apartment because the maid was there. Defendant Pierce then told Plaintiff the maid had just left, whereupon Plaintiff walked past the two police officers and opened the apartment door, went in and stated, "come on in", or words to that effect.

Once inside the apartment the police officers informed Plaintiff they had a warrant for his arrest and showed him a copy of the warrant. He replied that he had expected the officers and had removed all the most incriminating films and that he was not going to allow the officers to take anything from his apartment.

Due to the Plaintiff's state of agitation and hostility a uniformed policeman was called to the apartment since it had been the experience of the policemen that this had a calming effect upon people. Additionally, Defendant Hannon was called to the scene. He then had a civilian photographer photograph the interior of Plaintiff's apartment to establish the fact that the motion pictures of "Candy" and "Lorrie" had been photographed there. Various props used in those films such as pillows and a tapestry were seized and taken, along with numerous motion picture films, slides of nude women, photographs of the two complaining women in clothed and unclothed conditions, ledger books, check books, certificates of business, a lease of the premises, a motion picture camera, a photostatic copy of a post office box application, envelopes containing mail order advertising and mail orders from customers.

During the seizure of the ledger books Plaintiff, seated on a swivel chair, attempted to prevent the officers from taking these items and in doing so Plaintiff fell over backwards with Defendant Pierce on top of him. Plaintiff then agreed not to interfere any further so that he would not be handcuffed.

At Plaintiff's request, he was permitted to copy down all the orders that had been mailed to him, and all the police personnel left in small groups. Further, as Plaintiff also asked, he was not handcuffed and was accompanied by just two plain clothes officers to the unmarked police car in order to be inconspicuous and avoid embarrassment with his neighbors. On the way to the police station Plaintiff was allowed to attempt to cash a check at a market by his apartment to make bail.

Plaintiff was later tried for violation of California Penal Code, Section 311.2 in Municipal Court and convicted. Defendants Hannon, Pierce and Keller testified at that trial. Officer Wade who was present on both occasions at Plaintiff's apartment did not testify and was not made a defendant in this action.

Thereafter, upon Writ of Habeas Corpus, Plaintiff was discharged by the California Supreme Court from the custody imposed by the judgment of the Municipal Court. In re Klor, 64 Cal.2d 816, 822–823, 51 Cal.Rptr. 903, 907, 415 P.2d 791, 795 (1966).

█ In the Municipal Court prosecution and trial certain motion pictures were returned to the Plaintiff by Order of that Court and delivered to him by Defendant Hannon. Plaintiff claims that these films had been damaged and mutilated, but the short answer to this is that, after inspecting the films, Plaintiff signed a document which specifies his admission to the contrary:

> "All above items returned to the Defendant in substantially the same condition as they were when taken into custody by the police. Items were returned to Defendant on October 21st, 1964, at 8:30 p. m.
>
> ROBERT A. KLOR"

This Court is confronted with deciding whether the three police officers, Hannon, Pierce and Keller violated the Plaintiff's Civil Rights under the provisions of 42 United States Code, Sections 1983 and 1985. In particular, the questions here raised are whether the seizures of various films from Plaintiff's stock in trade, photographic equipment and business records were unreasonable and whether a conspiracy existed between the Defendants to deprive Plaintiff of his civil rights.

█ In determining the propriety of the acts of Defendants the Court's evaluation must always start with the rule of reason tempered with the necessity of good faith:

> "So long as the defendant's conduct stemmed from his reasonable belief as to the requirements of the law and was not unreasonable in any other way, he cannot be held responsible—under the standard of liability set forth in Monroe v. Pape [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492.]—for the deprivation of plaintiff's rights. 'No one has a constitutional right to be free from

a law officer's honest misunderstanding of the law or facts in making an arrest' Agnew v. City of Compton, 239 F.2d 226 at 231 (9th Cir. 1956), cert. den. 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed. 2d 910 (1957). Thus, the action of a police officer cannot be tortious when the officer proceeds on the basis of his reasonable, good faith understanding of the law and does not act with unreasonable violence or subject the citizen to unusual indignity." Bowens v. Knazze, 237 F.Supp. 826, 829 (N.D.Ill., 1965).

There is no question but that the Defendant Pierce on September 10th, 1964 was in possession of a valid warrant for the arrest of the Plaintiff for violation of four counts of California Penal Code, Section 311.2. However, the inquiry is directed at both the propriety of searching and seizing property following the arrest and the reasonable relation of the items taken to the crime charged.

█ It is well recognized that a search incident to a lawful arrest is proper. People v. Scott, 170 Cal.App.2d 446, 453, 339 P.2d 162, 166 (1959); Leahy v. United States, 272 F.2d 487, 490 (9th Cir. 1959).

█ Further and obviously, a search is proper when made incidental to an arrest pursuant to a warrant which does not provide for a search. People v. Pressley, 242 Cal.App.2d 555, 560, 51 Cal.Rptr. 563, 567 (1966); United States v. Pisano, 193 F.2d 361, 363, (7th Cir. 1951).

█ Here, Defendant Pierce and his partner, Officer Wade, were possessed with a warrant for Plaintiff's arrest. They had sought to find him at his post office box and several times at his apartment, the only locations known to them where he could be found. Then, contact was made at the latter location while they were standing outside his door as he came from the adjacent elevator. Plaintiff, after a conversation regarding the avoidance of the maid cleaning his apartment and being informed that she had left, opened the door of his apartment and led the policemen inside. Once in-

side, the Plaintiff was served with the warrant. Thereafter, the seizure of numerous items of Plaintiff's personal property took place. The power to search at this time clearly existed.

■ A search, as incident to a lawful arrest, may be made of premises on which the arrest was made and which are under the suspect's control at the time of the arrest. People v. Chapman, 207 Cal.App.2d 557, 571, 24 Cal.Rptr. 568, 576 (1962).

■ Under California Law the *"premises* under a suspect's control" is broadly interpreted and is not limited to the exact location where the suspect is arrested. Arrest occurred 20 or 25 feet from suspect's house, search of house allowed, People v. Aquilar, 191 Cal.App. 2d 887, 890, 13 Cal.Rptr. 121, 123 (1961). Search of a garage located beneath suspect's apartment following his arrest in the apartment, held incident to arrest, Trowbridge v. Superior Court, 144 Cal. App.2d 13, 18, 300 P.2d 222, 226 (1956) and People v. Smith, 166 Cal.App.2d 302, 306, 333 P.2d 208, 210 (1958). Search in washroom at end of hallway on which defendant's room faced, held reasonably incident to arrest which was accomplished in rented room, People v. Wasco, 153 Cal. App.2d 485, 487, 314 P.2d 558, 560 (1957). Search of an area 20 feet from house in which defendant arrested, held permissible, People v. Montes, 146 Cal. App.2d 530, 534, 303 P.2d 1064, 1068 (1956).

Further, a search incident and pursuant to an arrest under or by warrant is reasonable and a search warrant is not required. United States v. Rabinowitz, 339 U.S. 56, 65, 70 S.Ct. 430, 435, 94 L. Ed. 653, 660 (1950); Collins v. Klinger, 332 F.2d 54, 56–57 (9th Cir. 1964).

■ The decisive question in determining whether a search made after an arrest, without a search warrant, is reasonable, is not whether a search warrant could have been procured, but whether the search made was reasonable. United States v. Pisano, 193 F.2d 361, 363 (7th Cir. 1951).

■ At the time of this incident, September, 1964, it was the rule in California that any articles which have been used by the suspect to commit the crime for which he was arrested, or which constitute evidence of the crime, may be seized and used as evidence. People v. Chapman, 207 Cal.App.2d 557, 571, 24 Cal.Rptr. 568, 576 (1962).

Subsequently, the California Supreme Court, in further consideration of this proposition, has said the rule that "mere evidence" of a crime as opposed to contraband or instruments or fruits of the crime cannot be seized is not a constitutional standard and has no application in California. People v. Thayer, 63 Cal.2d 635, 642, 47 Cal.Rptr. 780, 784, 408 P.2d 108, 112 (1965), cert. den. 384 U.S. 908, 86 S.Ct. 1342, 16 L.Ed.2d 361 (1966).

The items seized by the Defendants Hannon, Pierce and Officer Wade consisted of one reel from each of the numerous stacks of different motion picture films Plaintiff sold in his business, several larger reels of film, a motion picture camera, photographic lights, pillows, a tapestry, boxes of color slides of nude women, photographs of the two women who made the report to the police depicting them in clothed and unclothed states, a magazine containing the Plaintiff's advertisement of his products, advertising brochures and stationery, a business Certificate, a lease of the premises, post office box application and number, check and ledger books.

■ In light of the broad scope of evidence which can be seized under the law of California that existed at the time of the incident giving rise to this action, this Court is of the opinion that the seizure of all the property was reasonable when considered in respect to the crime for which the arrest was made.

California Penal Code, Section 311.2 provides:

" § 311.2 [Sale or Distribution, etc., of obscene matter: Penalty.] Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this State for sale

or distribution, or in this State prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor. [Added by Stats.1961, Ch. 2147 § 5.]"

The taking of such things as the motion picture camera, photographic lights, pillows, tapestry, photographs of the two complaining women and lease of the premises were all related to establishing the elements of knowingly preparing, publishing and printing obscene matter as these were the means by which the Defendants reasonably hoped to prove that Plaintiff did indeed photograph the films "Candy" and "Lorrie".

Additionally, the confiscation of the numerous films, slides of nude women, magazine containing Plaintiff's advertisement, advertising brochures and stationery, business Certificate, lease of the premises, post office box application and number, and checks and ledger books were at least "mere evidence" of the crime, that is, such items strongly tended to show that Plaintiff distributes, offers to distribute or has in his possession with intent to distribute the motion pictures for which he was prosecuted.

The seizure of the check book which had entries dating several years before the incident was also proper on another ground. Defendant Hannon observed that out of 42 sales there were 27 refunds. Such a curious state of business would lead the ordinary man to suspect there may be a purposeful scheme to evade taxes. Where officers are rightfully searching a room for evidence connecting the suspect with one crime, there is no reason for ignoring evidence showing another crime discovered during the course of the search. People v. Littlejohn, 148 Cal.App.2d 786, 792, 307 P.2d 425, 428 (1957).

Once evidence is lawfully obtained, the State may use it in the enforcement of any law which may have been violated. People v. Lujan, 141 Cal. App.2d 143, 147, 296 P.2d 93 (1956).

This Court is further persuaded as to the propriety of the search by the recent Supreme Court decision in Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In that case, the United States Supreme Court also rejected the distinction between seizure of items of evidential value only and seizure of instrumentalities, fruits of the crime or contraband. The Court further stated, "Nothing in the language of the Fourth Amendment supports the distinction * * *. Privacy is disturbed no more by a search directed to a purely evidentiary object than it is by a search directed to an instrumentality, fruit, or contraband." Id., at p. 301. The various items seized were within the ambit of "mere evidence" and there was no violation of Plaintiff's constitutional rights.

Although the Municipal Court wherein Plaintiff was prosecuted was of the opinion that some of the items seized were done so illegally, this Court is not bound by such decision even if it were of the same mind. It is not the law that each and every time a search is determined to be unlawful, the person searched has a cause of action under the Civil Rights Act. Bowens v. Knazze, 237 F.Supp. 826, 827 (N.D.Ill.1965).

The good faith and reasonableness of the Defendant Police Officers which further buttress this Court's opinion that their searches, seizures and other actions were lawful and well within the guidelines of the case law, both Federal and California, is shown by the concern they displayed towards the Plaintiff at the time of Plaintiff's arrest by warrant on September 10, 1964. He was permitted to make copies of all his accumulated mail orders so there would be no interruption of his business. His request that the policemen assembled in his apartment leave in small groups to avoid drawing attention was also honored. Additionally, Plaintiff was permitted to walk from his apartment without handcuffs and accompanied only by two offi-

cers in civilian clothes so there would be no embarrassment if seen by his neighbors. Lastly, Plaintiff was permitted to stop at a nearby store to cash a check in order to obtain funds for bail on the way to the police station.

■ All in all, the Court must find and conclude that, actually and contrary to the allegations of the complaint, there was no conspiracy to deprive Plaintiff of his civil rights; his arrest and the searches and seizures conducted in his apartment were clearly constitutional and legal; no property or rights of Plaintiff were injured or damaged in any way; the Defendant Police Officers at all times acted reasonably and in good faith; and judgment should be rendered for Defendants and against Plaintiff.

Therefore, the cause having been submitted for decision by the Court, trial by jury having been waived by the parties, and the Court having duly considered the pleadings and all the evidence both oral and documentary, as well as the arguments of counsel made at the conclusion of the case, and the Court being fully advised in the premises, the following formal Findings of Fact and Conclusions of Law in favor of the Defendants and against Plaintiff are made and entered herein:

## FINDINGS OF FACT

### I

Plaintiff is, and at all times pertinent to this action, has been a citizen of the United States and the action is one for damages under 42 United States Code, Sections 1983 and 1985.

### II

From September 4th, 1964 to September 10th, 1964, and at all other pertinent times, the said Defendants were police officers employed by the City of Los Angeles and were acting within the scope and course of their authority as police officers and acting under color of law.

### III

On September 1, 1964 two women named "Candy" and "Lorrie" went to the Hollywood Police Station and complained that while they were employed to pose for motion pictures in the nude for the Plaintiff, Robert Klor, they believed he was taking pictures of their private parts and such pictures might be considered lewd and obscene. This report was taken by Defendant Hannon who was a Sergeant of Police assigned to the vice detail.

### IV

Defendant Hannon later assigned defendant police officers Pierce and Keller, and Officer Wade, to investigate the complaint and report of the women, Candy and Lorrie. Pursuant to their assignment said police officers found an outstanding traffic warrant for a Robert Klor.

### V

On the afternoon of September 4th, 1964 Plaintiff was located at his apartment by the said police officers. The Defendants Pierce and Keller, and Officer Wade, identified themselves as police officers and were asked to enter the apartment by the Plaintiff, Robert Klor. Service of the warrant was then effected upon the Plaintiff who identified himself as Robert Klor.

### VI

Plaintiff was informed of the fact a complaint had been made against him for having made lewd and obscene motion pictures. He denied such accusation.

### VII

Defendants Pierce and Keller and Officer Wade asked the Plaintiff Robert Klor if they could look around and Plaintiff agreed. Plaintiff then voluntarily consented to a search and lead the police officers about the apartment, opening the doors to cupboards, drawers, shelves and the like in the kitchen, bathroom and bedroom.

### VIII

The three police officers did not open any of the doors to the various storage areas but saw a large volume of photographic slides of naked women and mo-

tion pictures all of which Plaintiff stated were a part of his business stock in the mail order sale of "girlie" slides and motion pictures.

### IX

Defendant Keller later took several slides from the open cupboard in the kitchen of Plaintiff's apartment, viewed them and believing they were possibly lewd or obscene, called defendant Hannon on the telephone for further instructions regarding the investigation of the Plaintiff.

### X

Defendant Hannon arrived at Plaintiff's apartment a short time later and was also voluntarily given a tour of the premises by the Plaintiff. Two cartons of film bearing the names "Candy" and "Lorrie" were seen by Defendant Hannon in the kitchen.

Plaintiff was later asked by Defendant Hannon if some of the films could be viewed and particularly four films he took from the kitchen including the two bearing the names, "Candy" and "Lorrie".

Plaintiff consented to exhibiting the films and voluntarily ran them in his own projector in the apartment for Defendants Hannon, Pierce, Keller and Officer Wade, who thereby saw the films entitled "Candy" and "Lorrie" and then formed the opinion that these films were obscene and in violation of the provisions of California Penal Code, Section 311.2.

### XI

Upon the request of Defendant Hannon, Plaintiff Robert Klor agreed and consented to permitting Defendant Hannon to take the films "Candy" and "Lorrie" to the Office of the City Attorney for viewing, but with the further statement that said films were unedited. Defendant Hannon then gave Plaintiff a receipt for said films and took them from Plaintiff's apartment when he left.

### XII

Subsequent to September 4th, 1964 the Office of the City Attorney of Los Angeles viewed the two films "Candy" and "Lorrie", and were informed of the Plaintiff's claim of lack of editing of the films. The City Attorney's Office was of the opinion the films were lewd and obscene and filed a complaint and sought a warrant for Plaintiff's arrest for violation of Section 311.2 of the California Penal Code, which warrant was issued by the Municipal Court, Los Angeles Judicial District.

### XIII

On September 10th, Defendant Pierce was in possession of this valid warrant, fair on its face, for the arrest of Plaintiff Robert Klor for four counts of violating California Penal Code, Section 311.2, and along with Officer Wade attempted to serve the warrant upon the Plaintiff by going to his post office box at the Hollywood Branch Post Office and then to Plaintiff's apartment several times that day.

During the afternoon of September 10th, 1964 while in the apartment house where Plaintiff resided, Defendant Pierce and Officer Wade saw a maid come from Plaintiff's apartment.

Defendant Pierce and Officer Wade were in plain clothes and Plaintiff approached and greeted them. Then, Defendant Pierce informed Plaintiff they wished to speak to him and Plaintiff replied they could not go into his apartment because the maid was inside. Plaintiff was then informed by Defendant Pierce that the maid had departed, whereupon Plaintiff walked past the two policemen, opened his apartment door and stated "come in" or words to that effect and the two policemen entered the apartment at Plaintiff's invitation.

### XIV

On the afternoon of September 10th, 1964 Defendant Pierce and Officer Wade arrested Plaintiff inside his apartment pursuant to the said warrant of arrest issued by the Municipal Court, Los Angeles Judicial District.

## XV

Upon service of the valid warrant Plaintiff became hostile and stated that he had expected the police officers to return and that in anticipation of his arrest he had removed or destroyed all the incriminating films he possessed. Plaintiff also stated that he was not going to allow the officers to take anything from his apartment.

Because of Plaintiff's agitated and hostile state of mind, a uniformed policeman, Officer Wade, was called to the apartment since it had been the experience of the police officers that this had a settling effect on people.

Defendant Hannon was then called to the apartment by telephone by Officer Wade and told of all the events that had occurred up to that time. Defendant Hannon ordered a civilian police photographer to the Plaintiff's apartment to take photographs to establish the fact Plaintiff had actually taken the motion pictures "Candy" and "Lorrie" in his apartment.

## XVI

Defendant Hannon arrived at Plaintiff's apartment and he along with Defendant Pierce and Officer Wade seized pillows and a tapestry depicted in the films "Candy" and "Lorrie". Said police officers also seized one box from each of the numerous stocks of different motion picture films being sold by Plaintiff in his business from the storage areas seen by them on September 4th, 1964, several large reels of film, a motion picture camera, photographic lights, boxes of color slides of nude women, photographs of the women Candy and Lorrie showing them in clothed and unclothed states, a magazine containing an advertisement by the Plaintiff, some advertising brochures and stationery, a business Certificate, the lease for the apartment, a post office box application and number, check and ledger books and order forms sent in by purchasers.

Each and every one of the above items was seized incident and pursuant to a valid arrest and were evidence of the crime for which the Plaintiff was arrested.

## XVII

During the seizure of the business papers such as the stationery, advertising brochures and purchasers' orders, Plaintiff did attempt to interfere with Defendant Pierce, and said Defendant Pierce and Defendant Hannon used only that reasonable force necessary to restrain Plaintiff, who was not injured as the result of the force used, and Plaintiff was not handcuffed on his promise not to interfere any further.

## XVIII

At Plaintiff's request, he was permitted to make copies of all the orders that had been mailed to him, and all the police personnel left in small groups. Further, as Plaintiff also asked, he was not handcuffed and was accompanied by just two plain clothes officers to the unmarked police car in order to be inconspicuous and avoid embarrassment with his neighbors. On the way to the police station Plaintiff was allowed to attempt to cash a check at a market near his apartment to obtain money for use as bail.

## XIX

Defendants Hannon, Pierce and Keller testified at the criminal prosecution of the Plaintiff. Officer Wade did not testify at the criminal trial and Defendant Keller was not present at Plaintiff's apartment on September 10th, 1964 and did not participate in any of the events on that date.

## XX

Pursuant to the Order of the Municipal Court, Los Angeles Judicial District, on October 21st, 1964, all the motion picture films, slides, negatives and motion picture camera and lights were returned to the Plaintiff by Defendant Hannon at the Hollywood Police Station, with the exception of the films "Candy" and "Lorrie" and the photographs of the two women bearing those names.

Plaintiff, Robert Klor, did view portions of each of the films which in his complaint he claims were damaged and thereafter voluntarily executed a release admitting that all items were returned to him "in substantially the same condition as they were when taken into custody by the police".

XXI

At no time did Defendants Hannon, Pierce or Keller agree or conspire among themselves or anyone else to interfere with the civil rights of the Plaintiff or to deprive him of his rights, privileges and immunities secured and guaranteed by the United States Constitution.

XXII

At no time did Defendants Hannon, Pierce or Keller intentionally, wantonly or maliciously damage or mutilate any or any one of the motion picture films belonging to Plaintiff and seized by said Defendants.

XXIII

At no time did Defendants Hannon Pierce or Officer Wade violently knock Plaintiff to the floor or assault Plaintiff's person, and any force used upon the Plaintiff was reasonable and necessary under the circumstances and provoked by the acts of Plaintiff himself.

XXIV

The evidence shows by a clear preponderance, in fact overwhelmingly and beyond any reasonable doubt, that Defendants Hannon, Pierce and Keller acted reasonably and in good faith, and seized property of the Plaintiff which was evidence of the crime for which he was arrested. Such lawful seizure was pursuant to a lawful arrest.

XXV

The allegations contained in Plaintiff's Complaint inconsistent with the Findings of Fact herein are untrue.

CONCLUSIONS OF LAW

I

All Findings of Fact which are actually Conclusions of Law are hereby incorporated and made a part of these Conclusions of Law.

II

This Court has jurisdiction of the cause pursuant to the provisions of 42 United States Code, Sections 1983 and 1985(3), and 28 United States Code, Sections 1331(a), 1343(1), 1343(3) and 1343(4).

III

No Defendant under color of any statute, regulation, custom or usage subjected Plaintiff or caused Plaintiff to be subjected to the interference or deprivation of any of his rights, privileges or entitlements secured by the Constitution or laws of the United States or the State of California.

IV

No Defendant conspired to abridge or deny to Plaintiff any of the rights, privileges or entitlements secured to him by the Constitution or the laws of the United States or of the State of California or any of the civil rights of Plaintiff, or to deny to Plaintiff equal protection secured by the laws.

V

Defendants were acting within the course and scope of their employment by the City of Los Angeles as police officers and were acting in good faith and under color of law.

VI

Defendants and each of them reasonably and in good faith did search and seize property of the Plaintiff incident to a lawful arrest pursuant to a valid warrant which property was evidence of the crime for which the Plaintiff was arrested and reasonably related thereto.

VII

Defendants and each of them had and have a good and valid defense to this action under the Civil Rights Act of 1871 for reasonable conduct in the performance of their duties in good faith and with legal cause to act.

## VIII

No Defendant performed any unlawful or illegal act.

## IX

No Defendant entered into a conspiracy to perform any unlawful or illegal act.

## X

The allegations contained in Plaintiff's Complaint inconsistent with the Findings of Fact herein are untrue.

## XI

Defendants Terrance W. Hannon, Terry D. Pierce, and Ronald Keller are entitled to judgment in their favor.

## XII

Plaintiff is to bear costs of all parties. Let judgment be entered accordingly.