[No. 3897-1.    Division One.    April 12, 1976.]

*In the Matter of the Application for a Writ of Habeas Corpus of* STEPHEN JEFFRIES.

---

*Christopher T. Bayley, Prosecuting Attorney,* and *Douglas B. Whalley, Deputy,* for petitioner.

*Lish Whitson, Ray Thoenig,* and *Philip G. Hubbard* of *Seattle-King County Public Defender,* for respondent.

SWANSON, J.—Can Washington courts, as courts of an asylum state, consider the question of whether an accused was denied a speedy trial by the demanding state in a habeas corpus proceeding held pursuant to RCW 10.88.290 and incident to interstate rendition?[1] The trial court considered the question and concluded that the accused's due process rights had been denied by the demanding state, New Jersey, sustained the writ of habeas corpus, and quashed the Governor's warrant of extradition. We granted certiorari to review the order quashing the warrant.

On a warrant of extradition issued by the Governor of Washington, Stephen Jeffries was taken into custody by the King County Sheriff and held for delivery to agents from New Jersey.[2] In an effort to prevent his rendition to New Jersey, Jeffries applied to the Superior Court for King County for a writ of habeas corpus and moved to quash the Governor's extradition warrant on the basis that he had

---

[1] "No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state: *Provided,* That the hearing provided for in this section shall not be available except as may be constitutionally required if a hearing on the legality of arrest has been held pursuant to RCW 10.88.320 or 10.88.330." RCW 10.88.290.

[2] Stephen Jeffries did not seek an extradition hearing by the Governor prior to the issuance of the Governor's warrant.

been denied a speedy trial by the demanding jurisdiction's delay in obtaining extradition.

The pertinent evidence presented in support of Jeffries' petition for habeas corpus relief is as follows: The indictment that resulted in the fugitive warrant was based on a robbery occurring in Essex County, New Jersey, on October 12, 1971. Thereafter, an arrest warrant naming Jeffries went into the National Criminal Information Center's computer maintained by the FBI. In 1972, Jeffries was arrested in Seattle on an unrelated charge and detained on the NCIC warrant, but extradition was refused by New Jersey. In 1974, Jeffries was again arrested in Seattle and detained while a warrant check was made; again New Jersey refused to extradite Jeffries. On these facts the trial court concluded, "New Jersey has intentionally refused to grant a speedy trial  . . .  ," sustained the writ and quashed the warrant.

█ It is uniformly recognized that interstate rendition is essentially a federal matter, and the duty of the state is prescribed in article 4, section 2 of the United States Constitution, which states in part,

A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

Washington's Uniform Criminal Extradition Act provides in RCW 10.88.210 in pertinent part as follows:

[T]he governor of this state may in his discretion have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state.

█ When an accused fugitive is arrested, his judicial remedy if he opposes extradition and desires to test the legality of his arrest is to apply for a writ of habeas corpus. RCW 10.88.290; *see State v. Pritchett*, 12 Wn. App. 673, 530 P.2d 1348 (1975). The extent of inquiry in such a proceed-

ing is narrow and generally limited to a review of the Governor's determination that the jurisdictional prerequisites to the issuance of his warrant exist. Our Supreme Court stated in *In re Summers*, 40 Wn.2d 419, 420, 243 P.2d 494 (1952),

> Relator does not contend that the extradition papers are not in order. The governor of this state has issued a warrant of rendition upon them. His discretion in this regard is absolute, and his action is subject to judicial review only to see that the prerequisites to extradition are met. These are that the person sought to be extradited (1) is substantially charged with a crime against the laws of the demanding state, and (2) is a fugitive from justice. *In re Wallace* [38 Wn.2d 67, 227 P.2d 737 (1951)]; *In re Varona*, 38 Wn.2d 833, 232 P.2d 923 (1951).

*In re Wheeler*, 46 Wn.2d 277, 280 P.2d 673 (1955), states the criteria for determining when one is a fugitive from justice. The court in *Wheeler* stated at page 278,

> A person is a fugitive from justice, within the meaning of the constitution and laws of the United States, when it appears (1) that he was charged before a proper judicial officer of the demanding state with the commission of an extraditable crime, (2) that he was present in the demanding state on the date the alleged crime was committed, and (3) that he thereafter left the state. *In re Nerreter*, 28 Wn.2d 520, 183 P.2d 799 (1947) . . .

It is significant that Jeffries' challenge to the extradition warrant is not directed to any of the recognized prerequisites to extradition, but only to the due process question of speedy trial. A determination of that question involves the use of balancing tests and a consideration of several factors: length of delay, reason for the delay, whether defendant asserted his rights, and prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). The Florida Court of Appeals, in discussing this identical question, stated,

> Consideration of these factors requires the production of evidence that is beyond the scope of an extradition proceeding and more suitable to determination in the court of the demanding state. It must be assumed that one who

is subject to extradition will receive all of his constitutional safeguards upon his return to the demanding state. *State v. Cox*, 306 So. 2d 156, 160 (Fla. App. 1974). The United States Supreme Court in *Sweeney v. Woodall*, 344 U.S. 86, 97 L. Ed. 114, 73 S. Ct. 139 (1952), rejected an escaped Alabama prisoner's challenge to the constitutionality of Alabama's penal system in a habeas corpus proceeding in Ohio incident to interstate rendition and said at page 89,

> The scheme of interstate rendition, as set forth in both the Constitution and the statutes which Congress has enacted to implement the Constitution, contemplates the prompt return of a fugitive from justice as soon as the state from which he fled demands him; these provisions do not contemplate an appearance by Alabama in respondent's asylum to defend against the claimed abuses of its prison system. Considerations fundamental to our federal system require that the prisoner test the claimed unconstitutionality of his treatment by Alabama in the courts of that State. Respondent should be required to initiate his suit in the courts of Alabama, where all parties may be heard, where all pertinent testimony will be readily available and where suitable relief, if any is necessary, may be fashioned.

(Footnotes omitted.) Similarly, in state jurisdictions where the question has been presented, courts have uniformly held that the denial of a right to a speedy trial in the demanding state is beyond the scope of an extradition-habeas corpus proceeding in the asylum state. *Seymour v. State*, 21 Ariz. App. 12, 515 P.2d 39 (1973); *State v. Cox, supra; In re Maldonado*, 364 Mass. 359, 304 N.E.2d 419 (1973); *Sheriff of Clark County v. Randono*, 89 Nev. 521, 515 P.2d 1267 (1973), *cert. denied*, 416 U.S. 956, 40 L. Ed. 2d 307, 94 S. Ct. 1970 (1974).

In discussing the scope of inquiry in such a proceeding, our state Supreme Court in the early case of *In re Rudebeck*, 95 Wash. 433, 436, 163 P. 930 (1917) said,

> The courts of the asylum state, however, will not go into the merits of the case in an effort to determine the guilt or innocence of the accused, nor will they concern them-

selves with the technical sufficiency of the pleading. Their right of legitimate inquiry extends no further than to ascertain whether the pleading in question substantially charges the alleged fugitive with the commission of an offense against the laws of the demanding state.

*Accord, In re Wheeler, supra; Vetsch v. Sheriff of Spokane County,* 14 Wn. App. 971, 546 P.2d 927 (1976).

We hold that the scope of inquiry permitted courts in an asylum state in a habeas corpus proceeding incident to interstate rendition does not extend to consideration of an alleged denial of the right to a speedy trial. The locus for the settlement of such a question is the demanding state.

The order sustaining the writ and quashing the warrant is reversed.

WILLIAMS, C.J., and CALLOW, J., concur.

Petition for rehearing denied June 29, 1976.

Review denied by Supreme Court October 19, 1976.