IN RE THE MATTER OF NEIL HART.

No. 14024.
Submitted Aug. 21, 1978.
Decided Aug. 21, 1978.
Rehearing Denied Sept. 7, 1978.
583 P.2d 411.

236

Gary E. Wilcox, Billings, for appellant.

Mike Greely, Atty. Gen., Helena, Harold Hanser, County Atty., Billings, Russell Shultz, Wichita, Kan., for respondent.

MR. JUSTICE HARRISON delivered the opinion of the Court.

Petitioner Neil H. Hart on June 17, 1977, initiated an original proceeding in the District Court, Yellowstone County, seeking a writ of habeas corpus to prevent his extradition to the State of Nebraska to stand trial on the charge of burglary. Following a hearing held August 25, 1977, at which evidence was received and argument had, the District Court denied the writ and ordered petitioner to surrender himself to Nebraska authorities to stand trial. Petitioner appeals the denial of the writ.

The parties agree and it was so stipulated, that petitioner was charged by Information in Lincoln County, Nebraska, with the crime of burglary. The Information was filed April 23, 1975. Pursuant to Section II of the Internal Operating Rules of this Court, this appeal was classified #2 and submitted on briefs without oral argument.

Throughout 1975 numerous continuances were granted upon the motions of counsel for petitioner, based upon allegations of petitioner's health problems relating to a heart condition.

At some point thereafter, petitioner sought asylum in his home state of Montana and obtained the representation of Montana counsel who obtained further continuances of the Nebraska trial date, based upon affidavits of petitioner's physicians.

On March 27, 1976, petitioner's Nebraska bond was ordered forfeited and a bench warrant issued. *State v. Hart*, (1977), 198 Neb. 164, 252 N.W.2d 139. Extradition proceedings ensued.

On June 17, 1977, petitioner filed the petition for writ of habeas corpus, the subject of this action.

Following hearing, the District Court found the extradition procedures proper and that petitioner was a "fugitive from justice" from the State of Nebraska, within the meaning of the Uniform Criminal Extradition Act, Title 95, Chapter 31, Revised Codes of Montana, 1947. The court also determined petitioner's contention that he was entitled to a dismissal of the Nebraska charge for denial of a speedy trial, a contention advanced by petitioner at the hearing, "* * * is not properly an issue in the asylum state but is one cognizable in the courts of the State of Nebraska."

The issues presented this Court are:

1. Whether this Court must order a full evidentiary hearing in the case of an appeal of a denial of a petition for writ of habeas corpus by a District Court?

2. Whether the issue of lack of speedy trial is properly cognizable by the courts of the asylum state in a habeas corpus proceeding contesting extradition?

■ *Issue 1.* Habeas corpus is a prerogative common-law writ of ancient origin directed to a person detaining another, commanding him to produce the body of the prisoner at a designated time and place, to do, submit to, and receive whatever the court shall consider in that behalf. 39 C.J.S. Habeas Corpus § 2, p. 459. Some Montana cases have held it to be a special proceeding in the nature of a civil action; and, further held that the order of the District Court finally adjudicating the action to be a judgment from which an appeal would lie. *State ex rel. Newell v. Newell*, (1893), 13 Mont. 302, 34 P. 28; *State ex rel. Giroux v. Giroux*, (1897), 19 Mont. 149, 47 P. 798; *August v. Burns*, (1927), 79 Mont. 198, 255 P. 737. However, these cases involved the custody of minor children and do not involve extradition for criminal prosecution. *August v. Burns*, supra, not only held habeas corpus to be a pro-

ceeding civil in nature; but also held the decision of the District Court in a habeas corpus proceeding is res judicata, before the Supreme Court as to those matters properly determined by the District Court on the merits. As such, the District Court's decision would be reversed only for a showing of abuse of discretion.

■ The first decision wherein the criminal nature of habeas corpus was even approached was *State ex rel. Brandegee v. Clements*, (1916), 52 Mont. 57, 59, 155 P. 271, 272, where the Court said:

"The notion that habeas corpus is a special proceeding of criminal nature is based upon the fact that the statutory provisions relating to it are found in the Penal Code, in a title headed 'Special Proceedings of a Criminal Nature' (Rev. Codes, secs. 9630 et seq.), and upon some expressions found in *State ex rel. Jackson v. Kennie*, 24 Mont. 45, 60 P. 589, and *State ex rel. Hepner v. District Court*, 40 Mont. 17, 104 P. 872. These circumstances are to be considered, but they are not to be given weight beyond their due. The provisions for the writ of habeas corpus were not enacted, in the first instance, as part of our present Codes or of the Codes of 1895, but antedate them, and the inclusion of them in the Penal Code under the title heading 'Special Proceedings of a Criminal Nature' was primarily the codifiers' solution of a question which has always been vexatious in Code making, viz., the question of classification. The legislature, recognizing this, especially enacted in subdivision 3, section 3562, that the classification of the several parts of the four Codes is to be regarded as made for convenience and orderly arrangement only, and no implication or presumption of legislative construction is to be drawn therefrom. So that, whatever persuasive force may be given to collocation in determining the scope and meaning of particular statutes, the essential nature of a remedy recognized or conferred is not to be settled by considerations of this character alone. The expressions relied on from *State ex rel. Jackson v. Kennie* are neither definite nor decisional; while *State ex rel. Hepner v. District Court* simply holds that the statute does not provide for the disqualification of a judge by the state in a habeas corpus proceeding — an indisputable proposition, grounded, how-

ever, in the obvious fact that the state is not a party to such proceeding, rather than in any notion that the proceeding is criminal in its nature. The matter, however, is not res integra in this state. All the statutory provisions we now have which can in any wise characterize the proceeding as civil or criminal, existed in 1893 * * * and under them it was held in *State ex rel. Newell v. Newell*, 13 Mont. 302, 34 P. 28, that habeas corpus is a special proceeding in the nature of an action so far civil that the petitioner is a plaintiff and the disposition of the matter a judgment within the meaning of section 495 of the Code of Civil Procedure, Compiled Statutes of 1887, allowing costs to the plaintiff upon a judgment in his favor in special proceedings in the nature of an action. And this is entirely in harmony with the rule announced by the overwhelming weight of authority * * * the reasons for which are thus edited by Chief Justice Waite: 'The writ of habeas corpus is the remedy which the law gives for the enforcement of the civil right of personal liberty. Resort to it sometimes becomes necessary, because of what is done to enforce laws for the punishment of crimes, but the judicial proceeding under it is not to inquire into the criminal act which is complained of, but into the right of liberty notwithstanding the act. Proceedings to enforce civil rights are civil proceedings, and proceedings for the punishment of crimes are criminal proceedings. In the present case the petitioner is held under criminal process. The prosecution against him is a criminal prosecution, but the writ of habeas corpus which he has obtained is not a proceeding in that prosecution. On the contrary, it is a new suit brought by him to enforce a civil right, which he claims as against those who are holding him in custody, under the criminal process. * * * The proceeding is one instituted by himself for his liberty, not by the government to punish him for his crime. * * * Such a proceeding on his part is, in our opinion a civil proceeding, notwithstanding his object is, by means of it, to get released from custody under a criminal prosecution.' * * * From this, indeed, there is but qualified dissent; a few cases going so far as to hold that, where the writ is sought to secure release from custody exercised in virtue of the criminal laws, it may then be classed as criminal; * * * but no

decision has been called to our attention in which it is even suggested that the proceeding can be criminal in its nature when invoked on any other occasion. *In any recognized view of the matter, therefore, the proceeding here presented must be regarded as civil in its nature, the parties thereto being Mrs. Murphy and her guardian, both of whom are entitled to the privileges conferred by section 6315, Revised Codes, supra.*" (Emphasis supplied.) 52 Mont. 59, 155 P. 272.

We note from the last sentence of the above citation that it was not quite clearly differentiated, regarding the criminal nature of the writ, as *Brandegee* was, by its own facts, decidedly civil in nature. Nor was the question resolved by *August v. Burns*, supra, decided in 1927, another child custody case wherein the Court stated:

"While it is true that, in the habeas corpus proceeding, as here, the plaintiff sought to cancel or annul the order appointing defendant guardian of the person of the child, and in his amended petition set up certain of the facts contained in his complaint in the case at bar, and such a proceeding is civil in its nature, and the decision of the court awarding custody of a minor therein entered is final, except for an abuse of discretion *(Ex parte Thompson*, 77 Mont. 466, 251 P. 163), the decision of the court is res adjudicata only as to those matters properly determined by the court on the merits: *(County of Silver Bow v. Kelly*, 68 Mont. 194, 216 P. 1106; *Bennetts v. Silver Bow Amusement Co.*, 65 Mont. 340, 211 P. 336.)

"The purpose of a writ of habeas corpus is to determine the legality or illegality of the restraint alleged to be exercised. It is available only to those persons, or on behalf of those persons, unlawfully imprisoned or restrained of their liberty * * * *and is independent of the legal proceeding under which the detention is sought to be justified.*" (Emphasis supplied.) 79 Mont. 213, 255 P. 741.

Thus, even though habeas corpus in extradition proceedings was discussed by the Montana Supreme Court, it was done so in proceedings involving child custody.

The matter was finally met directly by the Court in *State of Montana v. Booth*, (1958), 134 Mont. 235, 239, 328 P.2d 1104, wherein it was held that an appeal does not lie from an order denying a writ of habeas corpus in a criminal extradition case, or in a criminal case where the issue to be determined is the freedom of the relator or the legality of his detention; and that the order of the District Court denying a petition for writ of habeas corpus is not res judicata, so far as the Supreme Court of the State of Montana is concerned, since a writ of habeas corpus is an original writ issuable out of either the District Court or the Supreme Court and therefore its denial by the District Court does not divest the Supreme Court of jurisdiction to grant a second application. *Booth* went on to point out an appeal does lie from an order of the District Court denying a writ of habeas corpus in a case involving child custody, since the custody case is in the nature of a civil equitable suit and an order denying the writ in the District Court in such a case amounts to a judgment determining the merits of the controversy.

In *Booth* a petition in habeas corpus was filed with the District Court alleging the petitioner's arrest for extradition was illegal. The petition was denied and he petitioned for rehearing approximately two months later. The petition for rehearing was denied and five days later the petitioner attempted to appeal the adverse judgment rendered against him to the Montana Supreme Court. The Court said:

"As the outset, no appeal lies from the order denying the writ of habeas corpus in this case. The rule was first laid down in *State ex rel. Jackson v. Kennie*, 24 Mont. 45, 49-51, 60 P. 589 by Mr. Chief Justice Brantly, that an appeal does not lie from an order denying the writ of habeas corpus in a proceeding criminal in nature, — that is, where the issue to be determined is the freedom of the petitioner, or the legality of the petitioner's detention. The reason for the rule being that denial of habeas corpus is not res adjudicata; the writ of habeas corpus being an original writ — issuable out of either the district or supreme court. Thus, denial of the writ in district court

does not divest this court of jurisdiction to grant a second application. *In re Pyle*, 72 Mont. 494, 496-497, 234 P. 254.

"This court, however, has held that an appeal lies from an order of the district court denying the writ of habeas corpus in a case involving the custody of a minor child. * * *

"The reason for allowing an appeal in that type of case is said to devolve upon the essential nature of the proceedings in the custody case. Thus, a custody case has been said to be in the nature of a civil equitable suit; the petitioner to be in the position of a plaintiff in the cause; and the order denying the writ to be a judgment determining the merits of the controversy from which a civil appeal lies. *In re Thompson*, supra.

"Mr. Justice Angstman concisely stated the distinction between the two types of cases in *Ex parte Reinhardt*, supra, wherein he said [88 Mont. 282, 292 P. 582]:

" 'Ordinarily, the doctrine of res adjudicata has no application in habeas corpus proceedings. As was stated by Mr. Justice Galen in the case of *In re Pyle*, 72 Mont. 494, 234 P. 254: "A decision on habeas corpus by one court does not constitute a bar to another proceeding of the same character in another court having jurisdiction, and the fact that a justice of this court has once issued a writ, returnable for hearing before a district judge, does not, after decision by the district judge, divest this court of jurisdiction to entertain a second application, issue the writ, and make it returnable before another district judge, or one of its members or before the court itself. No appeal is permitted in habeas corpus cases, and successive applications for the writ may be made until the judicial power of the state has been exhausted." ' " 134 Mont. 239, 328 P.2d 1107.

Thus, as of 1958, this Court recognized that habeas corpus has a dual nature: (1) It is civil in nature when involved in child custody cases and the like, and the decisions of the various District Courts, in such proceedings, are appealable and res judicata as to certain matters heard at the District Court level.

(2) It is also criminal in nature from which no appeal will be

entertained from a denial of the petition when the nature of the action in which it is originally brought is criminal in nature, such as extradition proceedings. In these proceedings, successive applications for the writ may be brought to the Supreme Court until the judicial power of the state has been exhausted. Further evidence of the writ's dual nature is found in the Revised Codes of Montana in that one section of Code classifies it as a special proceeding:

"*Table A. Special statutory proceedings under Rule 81.*

"Following is a list of sections of the Revised Codes of Montana, 1947, as amended, pertaining to special proceedings which are excepted from these rules in so far as they are inconsistent or in conflict with the procedure and practice provided by these rules:

"* * * * * *

"Habeas corpus . . . . 94-101-1 to 94-101-33." 7 R.C.M.1947, Table A, p. 1039.

Apparently the list for statutes superseded by Table A has been added to, but habeas corpus has not been amended or deleted by any recent additions to the Montana Rules of Civil Procedure.

Appeals to the Montana Supreme Court are entertained in all special proceedings:

"*Rule 1. Scope of rules — From what judgment or order an appeal may be taken.*

"These rules govern procedure in appeals in civil cases to the supreme court of Montana from Montana district courts and original proceedings in the supreme court of Montana. The party applying for original relief is known as the petitioner and the adverse party as the defendant. The party appealing is known as the appellant, and the adverse party as the respondent.

"A party aggrieved may appeal from a judgment or order, except when expressly made final by law, in the following cases:

"(a) From a final judgment entered in an action *or special proceeding commenced in a district court*, or brought into a district court from another court or administrative body." (Emphasis supplied.) M.R.App.Civ.P., 7 R.C.M.1947, (1977 P.P. p. 273.)

However, the writ if also classified in the Code of Criminal procedure, Title 95, Chapter 27, R.C.M., which provides for no appeal from an order denying the granting of the writ. This chapter is "buttressed" so to speak by Rule 17(b), M.R.App.Civ.P., which allows for original proceedings in habeas corpus to be initiated in the Supreme Court.

The mechanics which may be followed by the Supreme Court when a petition for the writ is filed therein after a denial to grant the petition has been entered by the District Court are set forth in *Ex parte Reinhardt*, (1930), 88 Mont. 282, 286, 292 P. 582, citing *In re Pyle*, (1925), 72 Mont. 494, 234 P. 254:

" 'A decision on habeas corpus by one court does not constitute a bar to another proceeding of the same character in another court having jurisdiction, and the fact that a justice of this court has once issued a writ, returnable for hearing before a district judge, does not, after decision by the district judge, divest this court of jurisdiction *to entertain a second application, issue the writ, and make it returnable before another district judge, or one of its members or before the court itself. No appeal is permitted in habeas corpus cases, and successive applications for the writ may be made until the judicial power of the state has been exhausted.*' " (Emphasis supplied.) 88 Mont. 286, 292 p. 584.

Thus this Court, in a proceeding of this nature will:

(1) Accept the successive application for the application for the writ; and (2) make it returnable before (a) the Court itself, or (b) one member of the Court, or (c) make it returnable before another district judge; or (d) deny the issuance of the writ. To hold otherwise or to say that this proceeding is one which should be brought by appeal would be to deny the last resort to due process by criminal defendants. An original proceeding or the institution of like proceedings before this Court is necessary due to the extreme delays which can be encountered in the appellate process.

Therefore, the speedy nature of the writ must never be sacrificed by relegating habeas corpus, in criminal proceedings, to appellate procedure. The only way to protect persons charged with a crime

and preserve the speedy nature of the writ is to recognize that it is dual in nature, viz. — civil as well as criminal. As such, the only issue raised by the petitioner is the second and we resolve it as hereinafter set out.

■ *Issue 2.* May the petitioner raise the issue of lack of speedy trial in the asylum state in a habeas corpus proceeding brought to contest extradition proceedings?

In its conclusions of law, the District Court ruled on this question:

"2. That petitioner's speedy trial contention is not properly an issue in the asylum state but is one cognizable in the courts of the State of Nebraska.

"* * *

"6. That the petitioner is, within the meaning and purview of the Uniform Criminal Extradition Act, the same being Title 95, Chapter 31 of the Revised Codes of Montana, 1947, a fugitive from justice from the State of Nebraska."

The District Court did not prevent the petitioner from presenting evidence on the question of the denial of a speedy trial. The transcript reveals that his counsel Mr. Shultz, a Nebraska attorney, made an evidentiary statement to the court, without objection from the state, which consumed 33 pages of the transcript. Thereafter, he presented evidence to corroborate his statement through the petitioner, Neil Hart, and Shirl Hart, wife of petitioner. In addition, he thoroughly cross-examined Marvin Holscher, the state's attorney handling petitioner's case in Nebraska, for some 13 pages and introduced some 9 exhibits. All of this testimony and evidence was introduced to try and show that Hart was denied a speedy trial. However, the record demonstrates quite the contrary. In Hart's cross-examination, it was demonstrated that he had been traveling in Montana by car, and had traveled from Billings to Miles City, and Billings to Raynesford. It was also demonstrated, by admission, that he was able to travel to Nebraska.

246

The record further demonstrates that Hart was represented in Nebraska by a Mr. Veyhnalek; that Shultz never made a formal appearance before the Nebraska court; that he was not admitted by the Nebraska court to practice there or represent Hart in the proceedings there; that Mr. Veyhnalek, petitioner's Nebraska counsel, was not aware Shultz was representing Hart; that Hart was being represented in Nebraska by Mr. Veyhnalek and in Montana by Frank Kampfe and Mr. Guthals and, that while Mr. Shultz was stating he could produce Hart for trial in Nebraska, during a certain period of time, Montana counsel was saying Hart could not travel.

Shultz argues that, by letter dated November 11, 1976, directed to the Nebraska state's attorney, he was willing and able to present Hart, in Nebraska, for trial "sometime on or about the week of the 20th of December, or early in January of 1977." In the same letter counsel admitted he had not consulted with Nebraska counsel, Mr. Veyhnalek, about doing so. The medical reports furnished petitioner's counsel and thence communicated to Nebraska, demonstrate that on July 19, 1976, Dr. Karas stated, to Mr. Shultz, that Hart should not undergo excitement or emotional stress until the question regarding his physical condition, that is, whether or not he was in fact suffering some type of heart disease, was first resolved. Thereafter on November 8, 1976, the same doctor stated the petitioner's condition was still unclarified and recommended that no emotional stress (from court appearances) should be allowed until his physical condition was resolved.

The state of Nebraska has been willing to try Hart since August 1975, however no one would produce him. Prior to July 1976, Mr. Moses, Montana counsel for petitioner, secured an affidavit from Dr. Karas dated February 23, 1976, to the effect that Hart could have only limited activity for the next 8 months and was not to suffer any excitement or emotional stress. Consequently, so far as Montana counsel and the state of Nebraska knew, Hart was incapacitated from February 1976 through December 1976 and into January 1977.

The supportive documents, filed by petitioner with his request that a writ issue, demonstrate that in August 1977, extradition proceedings from the state of Montana were being contested. A Governor's hearing was requested and all papers were ordered returned to the Governor's office by Dee Mees, extradition secretary. Finally, one of the first exhibits filed by the petitioner accompanying his petition in the District Court is a four page letter from Moses, Kampfe, Tolliver and Wright, dated October 16, 1976, detailing Hart's inability to appear before the Nebraska court for trial. This letter is directed to Robert Lohn, Governor Judge's Assistant General Counsel, and adequately demonstrates extradition was being contested during the summer of 1976 and into the fall.

Thus the record is replete with evidence regarding continuances had at the request of and the insistence of the petitioner and continuous refusals to appear in Nebraska for trial. If he wished to introduce more evidence, he could have at the District Court level. However, the question he wanted the District Court to rule on was deferred for the Nebraska court and this position is correct.

In a Nevada case, *Sheriff, Clark County, Nevada v. Randono*, (1973), 89 Nev. 521, 515 P.2d 1267, cert. den. 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 307, the defendant was convicted of multiple felonies in California. After being convicted and prior to sentencing, he was released on bail. At the time for sentencing he failed to appear and sought asylum in the state of Nevada. California issued a bench warrant for his arrest, extradition proceedings were begun, the defendant apprehended in Nevada, and a habeas corpus proceeding in the state of asylum instituted by him challenging the extradition proceedings. In those proceedings he alleged that his constitutional rights might or were in fact being violated as he had a heart condition and furthermore probable incarceration after imposition of sentence might be detrimental to his health. The District Court in Nevada sustained his contentions and granted his writ of habeas corpus. The Nevada authorities appealed to the Nevada Supreme Court and there the case was reversed. The court held:

" 'Habeas Corpus is the proper process for testing the validity of the arrest and detention by the authorities of the asylum state for extradition purposes. But a petition for a writ for that purpose tests only that detention; *it does not test the validity of the original or the contemplated incarceration in the demanding state* * * *. In essence the rule is that the court may determine whether a crime has been charged in the demanding state, whether the fugitive in custody is the person so charged, and whether the fugitive was in the demanding state at the time the alleged crime was committed.'
* * *

"A court in the asylum state cannot hear and determine the guilt or innocence of the accused as to the crime of which he is charged *or the constitutional validity of phases of the anticipated penal action by the demanding state.*

"Here the rationale of the district court is that Randono might not get fair treatment in the California court. Anticipated ill treatment in the demanding state is not within the contemplation of NRS 179.197 which provides that after the issuance of the executive warrant the legality of the arrest may be challenged by habeas. *No authority has been cited, nor have we found any, that would authorize a trial judge to anticipate a potential violation of the constitutional rights of an accused if he has extradited to the demanding state.* To the contrary, habeas has been denied where there has been a fear of lynching [citing cases]; fear of a cruel and barbarous punishment and treatment [citing cases]. Likewise, the question of the sanity of an accused is not to be decided in a habeas proceeding in an asylum state. * * *

"Extradition procedures contemplate the prompt return of a fugitive from justice upon a request from the demanding state * * * *Respondent makes no showing that relief is unavailable to him in the courts of California. The contentions which the respondent has made to the district court should more properly be made in the courts of California.*" (Emphasis supplied.) 515 P.2d 1268.

■ The general rule is stated in 39 C.J.S. Habeas Corpus § 120, p. 903:

"In a habeas corpus proceeding brought by a person held under extradition warrant, *the court cannot consider the violation of the accused's constitutional rights in the state demanding extradition, since the right of redress for any violation of his constitutional rights lies in the courts of the demanding state.* The court in an asylum state cannot hear and determine the constitutional validity of phases of penal action by the demanding state with respect to a fugitive or his offense, or the constitutionality of the statute upon which the fugitive is charged.

*"On habeas corpus in interstate extradition cases, the court will not decide whether the demanding state has deprived accused of constitutional guarantees of due process or equal protection, or has denied him of the right to a speedy trial or the assistance of counsel.* While there has been some authority to the contrary, it has been held that the court cannot consider whether accused is unlikely to have a fair trial or any trial at all in the courts of the demanding state, *or whether he will be in danger of death or other injury if returned to the demanding state."*

It is stated in 39 C.J.S. Habeas Corpus § 35, p. 555, that:

"As a general rule, the right of a person to habeas corpus relief depends on the legality or illegality of his detention, and this in turn depends on whether the fundamental requirements of law have been complied with, and not at all on the guilt or innocence of the prisoner, *or the justice or injustice of his* detention on the merits." (Emphasis added.)

 The burden of proof in a habeas corpus proceeding is upon the petitioner. The burden of course would shift should the petitioner make out a claim for relief. 39A C.J.S. Habeas Corpus § 194, p. 112, states:

"As a general rule, in a habeas corpus proceeding petitioner has the burden of proof or the burden of persuasion. However, under various exceptions to the general rule, once petitioner has established his claim, the burden shifts to the state to show the contrary of his allegations. Also, with respect to certain factual issues, the burden of proof may be shifted to the state because of specific

policy considerations or because the available evidence is likely to be in the hands of the state. Accordingly, the burden rests on one seeking discharge on a writ of habeas corpus to sustain the allegations of his petition, to make out a prima facie case, to prove the facts or establish grounds entitling him to relief, to overcome the presumption of validity and regularity of proceedings, and to show the invalidity of the judgment or sentence which he attacks. * * *

"The facts stated in the return are, prima facie, presumed to be true, and the burden of proof is on the petitioner or relator to show the contrary by allegation and proof. So where a prima facie case is made out by the return, the burden is on the petitioner to prove all facts necessary to show that the imprisonment, confinement, or restraint is illegal. He has the burden or proving the violation, deprivation, infringement, or denial of his constitutional, statutory, or legal rights generally, or denial of due process of law, and such burden exists where petitioner claims that he has been denied a fair trial, because of a partial jury, or prejudicial publicity, or because perjured testimony was knowingly used by the prosecution."

■ The petition filed herein does not allege Hart is a person other than the Neil Hart wanted by the state of Nebraska. It does not allege the papers are not in due and proper form. The return filed herein alleges there is no problem with identify and the papers are in due and proper form. The record admits the correctness of the foregoing. However, the petitioner has alleged his constitutional rights are being violated and the detention is illegal. Upon the presentation to the court of the documents, the prima facie case for the extradition of Hart was made out.

In *State ex rel. Hart v. Dist. Court*, (1971), 157 Mont. 287, 290, 485 P.2d 698, 700, the Court cited 39 C.J.S. Habeas Corpus § 39, p. 554, (involving the same Neil Hart in an extradition to Wyoming) as stating the general rule that:

" 'The governor's warrant is prima facie evidence that accused is a fugitive from justice and the burden of overcoming the prima facie case made by the warrant is on accused. In view of the settled

meaning of the term "fugitive from justice," as a general rule the only inquiry permissible on this issue is whether or not accused was physically present within the demanding state at the time the crime charged is alleged to have been committed, or within the demanding state at any time when it was possible for him to have committed the crime charged, or whether or not he is the person intended and actually charged with the offense * * *.' "

In *Hart* the Court then went on to say:

"This is the general rule in Montana. We stated in *State v. Booth*, 134 Mont. 235, 328 P.2d 1104, that:

" 'Likewise it is the general rule, from which there seems no dissent, that proof of an alibi, or absence from the scene of the crime at the time of its commission — assuming that such proof does not negative the presence of the prisoner within the demanding state — will not warrant the discharge of the person sought to be extradited. *In fact, such proof will not even be received by the courts; the usual way of stating the rule being that habeas corpus is not the proper proceeding to try the question of alibi or any question as to the guilt or innocence of the accused.*' " 157 Mont. 290, 485 P.2d 700.

Since the burden of proof is upon the petitioner once the prima facie case for his extradition is made out by the presentation of the Governor's warrant, the next question to come to mind is what burden does he have to meet? This is again answered in *State ex rel. Hart v. District Court*, supra, where it is stated that the burden must be beyond a reasonable doubt:

" 'The issuance of a warrant of rendition by the Governor of the asylum state raises a presumption that the accused is the fugitive wanted and it is sufficient to justify his arrest, detention and delivery to the demanding state. * * * In order to rebut the presumption the accused must prove *beyond a reasonable doubt* either that he was not present in the demanding state at the time of the alleged offense or that he was not the person named in the warrant, and upon proof of the one or the other he is entitled to be released.' " 157 Mont. 392, 485 P.2d 702.

We find that upon the presentation of the Governor's warrant a prima facie case for Hart's extradition and return to the state of Nebraska was demonstrated. Were he to tender evidence showing a deprivation of some constitutional right, the burden would be upon him. However, the evidence must be such as is relevant to the proceedings.

In *Buffalo v. Tanksley*, (1975), Colo., 536 P.2d 827, 829, the petitioner fought extradition proceedings to the state of Arizona from the state of Colorado. One of his points of contention was that the failure of the Arizona authorities to forward requisition documents to Colorado promptly, for the purpose of extradition, denied him the right to a speedy trial. To this the Colorado Supreme Court replied:

"However meritorious Buffalo's constitutional claims may be, when the issue centers on extradition in a habeas corpus proceeding, the question must be resolved by the courts of Arizona and not by the courts of Colorado. The constitutional issues are for the Arizona courts when the defendant is returned to stand trial * * *." 536 P.2d 829.

The same principle was announced in *Application of Jeffries*, (1976), 15 Wash.App. 302, 548 P.2d 594, where the state of New Jersey was attempting to extradite the petitioner from the state of Washington. The Washington Court of Appeals held that the denial of a speedy trial can be raised only in the demanding state and stated:

"We hold that the scope of inquiry permitted courts in an asylum state in a habeas corpus proceeding incident to interstate rendition does not extend to consideration of an alleged denial of the right to a speedy trial. The locus for the settlement of such a question is the demanding state.

"The order sustaining the writ and quashing the warrant is reversed." 548 P.2d 596.

In accord is *State ex rel. DeGidio v. Talbot*, (1977), . . . Minn. . . ., 250 N.W.2d 169, which held the contentions of the petitioner, in a habeas corpus proceeding, that the delays in commencing ex-

tradition proceedings against him violated his right of due process were issues which could be heard and determined only in the state demanding extradition, and they were not proper issues to be heard in the state of asylum.

Habeas corpus, in Montana, has a dual nature. In civil cases an appeal to the Supreme Court, from a denial or granting of the writ by a District Court, may be processed. However, in extradition proceedings the matter is considered criminal in nature, and no appeal lies from a denial to issue the writ by the District Court, to the Supreme Court. In such case the petitioner's remedy is to file a like proceeding with the Supreme Court. When this is done, as a matter of mechanics or procedure, the Supreme Court will accept successive applications for the writ until the state's power is exhausted. During these proceedings, the Supreme Court will take any one of four alternatives:

(1) The writ will be returnable before the Court itself; or,

(2) One member of the Court; or,

(3) Make it returnable before another District Judge; or

(4) Deny issuance of the writ.

Here, the only issue raised by petitioner Hart, by the proceeding before this Court, was that he was denied a quick and speedy trial by the state of Nebraska and the District Court should have passed on the question, ruling in petitioner's favor. The case authority holds to the contrary. Such an issue is properly cognizable only in the demanding state and not in the state of asylum. Petitioner's remedy is to raise this question in Nebraska. The order of the District Court is affirmed. Petitioner is required to surrender himself to the Nebraska authorities within 10 days by order of this Court.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY and SHEEHY concur.