762 P.2d 814

Andrew B. COLEMAN,
Petitioner–Respondent,

v.

STATE of Idaho, Respondent–Appellant.

No. 16767.

Supreme Court of Idaho.

Aug. 11, 1988.

Jim Jones, Atty. Gen., and Timothy D. Wilson, Deputy Atty. Gen., Boise, for respondent-appellant. Timothy D. Wilson argued.

Uranga & Uranga, Boise, for petitioner-respondent. Christopher M. Bieter argued.

BISTLINE, Justice.

The sole issue presented by this appeal is whether a prison policy which prohibits an inmate's access to the law library passes constitutional muster. The district judge held that a ten-day restriction on access to a law library, applicable only to those prisoners who receive disciplinary detention, is facially invalid because it abridges the fundamental constitutional right of access to the courts. We affirm.

Respondent Andrew Coleman is incarcerated at the Idaho State Correctional Institution (ISCI). On October 3, 1985, he was confined to thirty days in disciplinary detention for possessing a homemade knife in his cell. In October 1985, it was the policy of the ISCI not to allow an inmate physical access to the law library for his first ten days of detention. Coleman pursued a habeas corpus proceeding in which he challenged the ten-day restriction of access to the library as unconstitutional.

The writ was denied by Magistrate Willis. On appeal to the district court, Judge Bail held that the ten-day ban on the use of the penitentiary law library by inmates in disciplinary detention violated the constitutional right of access to the courts. The state appeals.

The seminal case involving prisoners' access to the courts is *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), where the Supreme Court of the United States stated:

We hold, therefore, that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing

of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

*Id.*, at 828, 97 S.Ct. at 1498 (footnote omitted). The Court based its decision on the proposition that without access to the courts inmates would be unable to bring *habeas corpus* and civil rights actions which are of fundamental importance in our constitutional scheme "because they directly protect our most valued rights," *Id.*, citing *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[1] As Professor Palmer noted, prior to *Bounds:*

[m]any of the practices which have prevailed in prisons through the country have amounted to impairments of the inmates' rights of access to the courts. Disciplinary actions for inmates' pursuing legal remedies, censorship or wholesale confiscation of a prisoner's legal documents and other such practices have been common in many of America's prison systems.

J. Palmer, *Constitutional Rights of Prisoners* § 7.2, at 87 (2d ed. 1977).

The State initially argues that the district court erred in holding that the ten-day ban on access to the library was unconstitutional—without there being a concomitant grant of any affirmative relief, namely, access to the library. (Coleman's initiating petition for the writ was prepared by an inmate law clerk.) It is well-established that a *habeas corpus* petition must demonstrate not only that some statute, procedure or action was unconstitutional, but also that the petitioner was adversely affected—or prejudiced—by the constitutional violation. *Thigpen v. Smith*, 603 F.Supp. 1519 (S.D.Ala.1985) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977);

---

**1.** Moreover, it has also been stated:

Perhaps the constitutional right most critical to prisoners is that of access to courts. Without access it is impossible for them to use the judicial system to vindicate other rights. Rights without remedies are often

meaningless, and remedies without access to courts for their enforcement can be illusory. Thus, the right of access is the lynchpin upon which other rights rest.

J. Golbert, N. Cohen, *Rights of Prisoners* § 20, at 22 (1981).

*Daniels v. Maggio,* 669 F.2d 1075, 1084 (5th Cir.1982); *Ashley v. Wainwright,* 639 F.2d 258, 260 n. 4 (5th Cir. Unit B 1981); *Lockett v. Blackburn,* 571 F.2d 309, 314 (5th Cir.1978) *cert. denied,* 439 U.S. 873, 99 S.Ct. 207, 58 L.Ed.2d 186 (1978)). However, a prison policy can be found to be facially unconstitutional even though specific relief, *i.e.,* library access in this instance, need not be awarded. Here the district judge first determined that the restriction was unconstitutional, but concluded that Coleman was not prejudiced where a writ was filed on his behalf. We see no merit in the State's overly technical challenge.

■ Because the regulation here involved restricts a fundamental constitutional right, the ten-day ban on access to the courts must be examined with strict scrutiny. Just as fundamental first amendment rights can be restricted by reasonable time, place and manner restrictions that are content-neutral, *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the fundamental right of access to the courts can be reasonably restricted so long as the legitimate interests of penal administration outweigh the extent to which the right of access is burdened. *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (ban against attorney-client interviews conducted by law students constitutes an unjustifiable restriction on the right of access to the courts).

■ In the instant case, however, the state has utterly failed to demonstrate what legitimate penological interests are furthered by the ten-day restriction. Simply put, we are unable to weigh the legitimate interests of the restriction against the extent to which the right of access to the courts has been burdened because the state has failed to advance *any* rationale for the ban. As the district judge stated: "The ISCI has shown no compelling reason to deny access to the law library to those serving disciplinary detention." R. at 35.

The following colloquy occurred during oral argument:

THE COURT [Chief Justice Shepard]: As appellant it's your responsibility, of course, to provide a record to this Court, right?

COUNSEL FOR THE STATE: That's correct.

\*     \*     \*     \*     \*     \*

THE COURT: But let's stay with my question. What did Judge Bail have before her as evidence as to a rationale for the rule, and what does this Court have before it as, in the record, as a rationale for the rule? I'm inclined to say nothing in either case. Am I wrong?

COUNSEL: Other than the statements of the state's counsel at the show cause hearing, there is nothing.

THE COURT: Where are those contained in the record?

COUNSEL: Unless there was ... They were referred to in Judge Bail's order. Um, I don't know that a transcript was prepared and sent ...

THE COURT: Why was not a transcript prepared?

COUNSEL: Pardon?

THE COURT: Why was not a transcript prepared?

COUNSEL: I don't know.

Thus, as the State concedes, the record is barren of anything establishing the legitimate penological interests served by the ten-day ban on access to the library. As a result, we can only conclude that there are no such interests.

"Where the government seeks to deprive persons of fundamental rights, it must prove to the Court that the law is necessary to promote a compelling or overriding interest." Nowak, Rotunda & Young, *Constitutional Law,* at 448 (2d ed. 1983). Without a factual backdrop setting forth the legitimate penological interests, if any, served by the ten-day ban, we cannot, and will not, weigh the competing interests which are usually presented in cases where a prisoner's right of access to the courts is restricted. *E.g., Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir.1986). The State has not only failed to demonstrate that the ten-day ban furthers a legitimate penological concern, but it has also failed, more

fundamentally, to establish a factual basis as a necessary predicate therefor.

■ Nor is it dispositive that in the instant case the prisoner was able to file his writ with the assistance of an inmate paralegal. A prison must provide inmates with access to an adequate law library or, *alternatively*, assistance from persons trained in the law. *Bounds, supra; see also Lindquist v. Idaho State Board of Corrections*, 776 F.2d 851 (9th Cir.1985). The State has failed to establish that each and every inmate who becomes subject to the ten-day bar will receive the assistance from law clerk inmates, as happened here. As the district court stated: "In fact, access to an inmate clerk may depend on access to the library." [2] R. at 35. Thus, we reject the State's argument that the arbitrariness of the ten-day ban is overcome simply because the respondent was fortunate enough to receive help from an inmate law clerk.

■ The State also contends that the ten-day ban is constitutionally permissible because inmates in detention are "in the same position as those inmates who are illiterate, uneducated or do not speak English. None of these inmates can directly make use of the books and materials in the law library." App.Br. at 7. This argument is without merit. If the State's reasoning were adopted, the government could outlaw every citizen's fundamental right to procreate, *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), on the basis that some couples are unable to conceive.

Furthermore, prison officials may not constitutionally prevent inmate paralegals from assisting those inmates who are illiterate, blind, or for some other reason require assistance in preparing their writs or other legal matters. *Johnson v. Avery, supra*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed. 2d 718 (1969). As the district court noted, *supra*, inmates in detention are not guaranteed the assistance of inmate paralegals on request. Simply because some inmates may choose not to exercise their rights

does not mollify the unconstitutional character of the ten-day restriction.

Accordingly, we uphold and affirm the district court's judgment that a blanket denial of access to the library is a violation of the constitutional right of access to the courts. No costs or attorney fees on appeal.

HUNTLEY and JOHNSON, JJ., concur.

BAKES, Justice, dissenting:

The petition for *habeas corpus* filed by Coleman in this case alleged that his rights had been violated by the following administrative action taken at the Idaho State Correctional Institution: (1) that the state had failed to provide him with the rules and regulations of the correctional institution; (2) that he had been found guilty of a disciplinary offense, *i.e.*, possessing an 8–inch knife in his cell when he was not responsible for its being there; and (3) that he was denied meaningful access to the courts in order to contest the disciplinary action and sanctions imposed upon him for the possession of the 8–inch knife.

The magistrate, to whom the case was assigned for hearing, reviewed the administrative record and found that the record before the hearing officer at the correctional institution supported the administrative action taken against Coleman. Specifically, on the only issue now before the Court on this appeal, the magistrate found that under *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), "The state must provide an adequate law library or adequate assistance from persons trained in the law." The magistrate found that Coleman had access to the courts based upon assistance from a person trained in the law, and therefore the curtailment of Coleman's access to the law library was not a constitutional violation, citing and relying upon the federal case of *Seibert v. McCracken*, 387 F.Supp. 275 (E.D.Okla. 1974). Additionally, based upon the admin-

---

**2.** This critical aspect of the record goes unmentioned in the dissent, and undercuts the straw man there erected. Moreover, a prisoner's right of access to the courts is, without question, a *fundamental* one. *See Bounds, supra*, 97 S.Ct. at 1498.

istrative record, the magistrate found "that the 10–day exclusion from the law library is not unreasonable and is a valid restriction which the state may impose on those inmates who do not comply with the regulations of the institution."

On appeal, the district court affirmed all the magistrate's findings and conclusions except those relating to the access to the law library. The district court acknowledged that *Bounds v. Smith, supra,* had held that access to adequate law libraries is only "one constitutionally acceptable method to assure meaningful access to the courts," and that other "alternative means may be used." The district court specifically quoted the following statement from *Bounds:*

> "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or adequate assistance from persons trained in the law.*" 430 U.S. at 828, 97 S.Ct. at 1498 (emphasis added).

The district court in this case recognized that petitioner Coleman did have adequate assistance from an experienced inmate law clerk (Dean Schwartzmiller), and thus he was able to obtain his constitutional right of access to the courts through the "adequate assistance from persons trained in the law." This is the approved alternative method described in *Bounds v. Smith, supra.* Nevertheless, the district court held that "[t]he blanket ten-day limitation on access to the law library for inmates in disciplinary detention is unconstitutional." However, its order concluded that "in this case the particular inmate did gain access to an inmate clerk and was not harmed by the rule. He is, therefore, not entitled to relief." Although the state agrees with the district court's conclusion that petition-

er Coleman did receive access to the courts, and therefore he "is not entitled to relief," as the magistrate had earlier held, the state appeals from the district court's conclusion that "[t]he blanket ten-day limitation on access to the law library for inmates in disciplinary detention is unconstitutional."

The majority opinion correctly acknowledges that "[i]t is well established that a *habeas corpus* petition must demonstrate not only that some statute, procedure or action was unconstitutional, but also that the petitioner was adversely affected—or prejudiced—by the constitutional violation. (Citing numerous cases.)" *Ante* at 902, 762 P.2d at 815. While both the district court and the majority of this Court have thus acknowledged that the petitioner must prove that he personally was adversely affected, not merely that someone else might be affected, the majority nevertheless states, without citing any authority, that "a prison policy can be found to be facially unconstitutional even though specific relief, *i.e.,* library access in this instance, need not be awarded."[1] *Ante* at 902, 762 P.2d at 815. Aside from the fact that no authority is cited for that proposition, the statement ignores the constitutional doctrine announced by the United States Supreme Court in *Bounds v. Smith, supra.* The Court there held that it is *access to the courts,* not *access to a law library,* which the Constitution guarantees. The Supreme Court of the United States expressly stated in *Bounds* that:

> "[W]hile adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here, as in *Gilmore,* does not *foreclose alternative means to achieve that goal.*" 430 U.S. at 830, 97 S.Ct. at 1499 (emphasis added).

Since there is no constitutional right to access to a law library, but only a constitu-

---

1. The majority's statement that "a prison policy can be found to be facially unconstitutional," even if an accurate statement of the law, would have no application in this case because the prison policy in question, *i.e.,* a ten-day ban on access to the law library, is not facially unconstitutional because it does not impinge on any constitutional right of the prisoner. There is no constitutional right of access to a law library,

only a constitutional right of access to the courts. *Bounds v. Smith, supra.* In order for there to be a "facially unconstitutional" argument, the prison policy would have had to impose a ban on access to the *courts,* which is the constitutional right involved, not merely a ban on access to a library, for which there is no constitutional right.

tional right to access to the courts, a prison policy which limits a prisoner, convicted of a disciplinary offense, from access to a law library for ten days is not a constitutional violation. As the Supreme Court noted in *Bounds*, a law library for prisoners could be eliminated entirely if other "alternative means to achieve that goal" were provided. As the Supreme Court expressly held in *Bounds*, one such alternative is "adequate assistance from persons trained in the law." That is what petitioner Coleman received in this case.

As both the magistrate and the district court specifically found, and as this Court acknowledges on appeal, Coleman did gain adequate access to the courts and thus was not harmed by the disciplinary action which restricted him to his cell for ten days. Accordingly, as the district court acknowledged, his constitutional right to access to the courts was not violated, and "[h]e is, therefore, not entitled to relief." While his access to the library was restricted, that was not a constitutional violation. Only if Coleman's constitutionally guaranteed right of access to the courts was violated would he have been entitled to relief. In this case there was no violation of Coleman's access to the courts.

In an attempt to justify their result, the district court and the majority opinion have shifted the burden of proof from petitioner Coleman and placed it on the state, contrary to our prior decisions. In any *habeas corpus* case, the burden is upon the petitioner to prove that his constitutional rights have been violated and that he is entitled to relief. *Jackson v. State*, 87 Idaho 267, 392 P.2d 695 (1964), *reh'g denied* 1964. *Accord Eagles v. United States*, 329 U.S. 304, 314, 67 S.Ct. 313, 319, 91 L.Ed. 308 (1946). *See In re Klor*, 64 Cal.2d 816, 51 Cal.Rptr. 903, 415 P.2d 791 (1966) (*en banc*); *Hithe v. Nelson*, 172 Colo. 179, 471 P.2d 596 (1970) (*en banc*), *reh'g denied* 1970; *McGee v. Crouse*, 190 Kan. 615, 376 P.2d 792 (1962); *In re Hart*,

**2.** The majority opinion's reference to "fundamental rights" misfocuses the issue in this case. We are dealing here with a specific constitutional right, *i.e.*, the right of access to the courts.

178 Mont. 235, 583 P.2d 411 (1978), *reh'g denied* 1978; *Roberts v. Staples*, 79 N.M. 298, 442 P.2d 788 (1968); *Phillips v. Page*, 451 P.2d 23 (Okla.Crim.App.1969); *State ex rel. Gilmore v. Cupp*, 1 Or.App. 22, 458 P.2d 711 (1969); *Horne v. Turner*, 29 Utah 2d 175, 506 P.2d 1268 (1973). *See also* 39 Am.Jur.2d Habeas Corpus § 152 (1968 & Supp.1987). Idaho's Uniform Post Conviction Procedure Act is an expansion of, and in many respects a replacement for, the writ of *habeas corpus, Dionne v. State*, 93 Idaho 235, 459 P.2d 1017 (1969), and our post conviction cases all state that the petitioner has the burden of demonstrating by a preponderance of the evidence the allegations upon which his petition is based. *State v. Beam*, 115 Idaho 208, 766 P.2d 678 (1988); *State v. Fetterly*, 109 Idaho 766, 710 P.2d 1202 (1988); *Holmes v. State*, 104 Idaho 312, 658 P.2d 983 (Ct.App.1983). The magistrate correctly placed the burden of proof on the petitioner Coleman and, based upon the administrative record which was before the magistrate, ruled that "the court finds that the ten-day exclusion from the law library is not unreasonable and is a valid restriction which the state may impose on those inmates who do not comply with the regulations of the institution," *citing Seibert v. McCracken*, 387 F.Supp. 275 (E.D. Okla.1974). However, the district court, and now this Court on appeal, shifts the burden of proof to the state by stating that, "Where the government seeks to deprive persons of *fundamental rights*, it must prove to the Court that the law is necessary to promote a compelling or overriding interest." *Ante* at 903, 762 P.2d at 816 (emphasis added). However, the government did *not* seek to deprive Coleman of a "fundamental right." There is no "fundamental right" of access to a law library.[2] What the Constitution guarantees is the right of access to the courts. *Bounds v. Smith, supra.* As the Supreme Court held in *Bounds*, "[L]aw libraries are [only] one constitutionally acceptable method to assure meaningful access to the courts...." There are other "alternative

*Bounds v. Smith, supra.* The prior decisions of the United States Supreme Court have stated that there are certain "fundamental rights" emanating specifically from the United States Con-

means to achieve that goal." 430 U.S. at 830, 97 S.Ct. at 1499. Since the ten-day ban on access to the library did not violate any of Coleman's constitutional rights, facially or otherwise, *see* footnote 1, the government did not have to "prove to the court that the law is necessary to promote a compelling or overriding interest," as the majority opinion alleges. *Ante* at 903, 762 P.2d at 816. In any event, the magistrate who reviewed this case on the administrative record, which this Court doesn't have, specifically found that "the ten-day exclusion from the law library is not unreasonable and is a valid restriction which the state may impose on those inmates who do not comply with the regulations of the institution."

In conclusion, it bears repeating that there is no constitutional or "fundamental right" of access to a law library by a prisoner; only a constitutional right of access to the courts is mandated. As the magistrate and the district court found, and as the majority opinion acknowledges, this petitioner, Coleman, was accorded his constitutional right of access to the courts. His own evidence demonstrates that none of his constitutional rights were violated.

Accordingly, the decision of the magistrate court dismissing the petition for writ of *habeas corpus* should be affirmed.

SHEPARD, C.J., concurs.

stitution. Some of those rights include the following: (1) the right to travel interstate, *Jones v. Helms,* 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981); (2) the freedom of association, *Bates v. City of Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); (3) the right to participate in the electoral process, *Harper v. Virginia State Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); and (4) the right to privacy, *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). On the other hand, some claimed rights have been held by the Supreme Court to not be fundamental rights: (1) the right to an equal education is not a "fundamental right," *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), *reh'g*

*denied* 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973); (2) the right to government employment is not a "fundamental right," *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); and (3) the right to a statute of limitations defense is not a "fundamental right," *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.,* —— U.S. ——, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988). The Supreme Court of the United States has never held that the right of access to a law library is a "fundamental right." It has also not held that access to a law library is a constitutionally guaranteed right. It has, however, in *Bounds v. Smith, supra,* held that the right of access to *the courts* is a constitutionally protected right, and that is the right involved in this case.